No. 45,514

Herbert D. Bruce and Carol Bruce, his wife, *Appellees*, v. E. C. Smith, d/b/a A & A Duraclean Service, *Appellant*, Duraclean Company, a corporation, and Isaac Magdaleno, *Defendants*.

(464 P. 2d 224)

Opinion filed January 24, 1970.

*Cliff W. Ratner*, of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., R. R. Barnes, Edmond L. Kinch*, and *Patrick L. Dougherty*, all of Wichita, were with him on the brief for the appellant.

*Elliott Fry*, of Wichita, argued the cause, and *Henry E. Martz, Clyde Wendelken*, and *William A. Bonwell*, all of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

Fontron, J.: The plaintiffs Herbert D. Bruce and Carol Bruce, his wife, bring this action to recover damages to a couch which was entrusted to A & A Duraclean Service to be cleaned. The action

was tried to the court which rendered judgment against the defendants E. C. Smith asd Isaac Magdaleno. The defendant Smith, alone, has appealed.

Basically it is Mr. Smith's contention, as it has been throughout the entire proceedings, that A & A Duraclean Service was owned and operated by Mr. Magdaleno when the couch was cleaned; that he, Smith, then had no connection whatever with the business; and that he is not personally liable for any damage occasioned to the sofa. In support of this argument Mr. Smith points to a stipulation filed of record that on June 15, 1965, Smith sold A & A Duraclean Service to Isaac Magdaleno. The execution of this stipulation, however, does not control the disposition of this lawsuit. Accordingly, we must take a look at the plaintiffs' evidence.

Sometime in July, 1965, Mr. and Mrs. Bruce decided to have a couch and other furniture cleaned and stored pending a change of residence. The couch was upholstered in a Gref material, or fabric, which Mrs. Bruce knew had to be cleaned with a solvent base solution.

After calling several cleaning establishments Mrs. Bruce, on July 16, 1965, called A & A Duraclean Service. The woman who answered the telephone told Mrs. Bruce that Mr. Smith, whom she identified as owner and manager of the business, could answer her questions. A man was then called to the phone who identified himself as Mr. Smith. In the ensuing conversation Mr. Smith satisfied Mrs. Bruce that he was familiar with Gref fabric and with the cleaning process required to clean it properly.

Relying on Smith's statements, Mrs. Bruce called him a few days later and arranged to have the couch picked up, and on July 26 Mr. Magdaleno and a Mr. Colbert, a shop employee, came and got the sofa. It was returned to the Bruce home on September 2 in a damaged condition, the color in one cushion and both arm boots having bled and faded.

The next morning Mrs. Bruce called A & A Duraclean Service twice and asked for Mr. Smith but was advised that Smith was not there. That same afternoon Mr. Colbert delivered a rug to the Bruce home and for the first time Mrs. Bruce was told that Magdaleno was running A & A Duraclean Service. A day or so later, Mrs. Bruce called Mr. Magdaleno who said he would ask Mr. Smith to look at the furniture, and on September 10, Smith went to the Bruce home and suggested the damaged items be sent to National Dura-

clean Service in Illinois. This suggestion was followed but the damage was never remedied, the sofa being returned to the Bruces without any change in its condition.

The trial court did not make findings of fact or conclusions of law in entering judgment against the defendants Smith and Magdaleno. Accordingly, the plaintiffs maintain that the general finding, which is implicit in the judgment, determines in their favor every material controverted issue of fact, and plaintiffs proceed to invoke the ancient and venerable rule that where there is any evidence to support a general finding, the judgment based thereon will not be disturbed on appellate review.

Appellants correctly cite the law in this regard. In *Wycoff v. Board of County Commissioners,* 191 Kan. 658, 383 P. 2d 520, this court has said:

". . . It is well settled that where a case is tried by the court and a general finding made in favor of the defendant and no special findings are requested or made, the general finding includes every material fact necessary to sustain the judgment based upon such finding, and where there is some evidence to support the general finding and judgment, it will not be disturbed. (*Biltgen v. Biltgen,* 121 Kan. 716, 250 Pac. 265; *Sledd v. Munsell,* 149 Kan. 110, 86 P. 2d 567; *Dryden v. Rogers,* 181 Kan. 154, 157, 309 P. 2d 409; *Huebert v. Sappio,* 186 Kan. 740, 742, 352 P. 2d 939.)" (p. 672.)

We believe the testimony of Mrs. Bruce, which the trial court obviously considered credible, was sufficient of itself to support the judgment. In brief summary, her evidence was that the lady answering the telephone at A & A Duraclean Service identified Mr. Smith as being owner and manager of the cleaning shop; that Mr. Smith came to the phone and satisfied her that he knew his business and that her couch could be cleaned by the Duraclean process and she relied on his statements; that arrangements were later made with Smith to have the couch picked up; that the couch was returned in damaged condition; that Mrs. Bruce called A & A Duraclean Service and asked for Mr. Smith who was gone at the time but who came out a few days later and made a suggestion which the Bruces followed—but alas, to no avail!

According to Mrs. Bruce, she was not aware that Mr. Smith did not own A & A Duraclean Service until after the damaged couch was returned. Smith's sale of the business to Magdaleno was made known to Mrs. Bruce only after she had discovered the damage. From the evidence we believe the conclusion is justified that Mrs. Bruce dealt with Mr. Smith on the basis of his proprietorship of

A & A Duraclean Service, and that her belief in such respect was reasonably induced by Mr. Smith's own conduct and conversations during the course of his dealings with her.

Mr. Smith, it is true, categorically denied that he ever conversed with Mrs. Bruce by telephone. This conflict in the evidence was for the trial court to determine, not this court. We are constrained to comment, however, that the testimony given by Mrs. Bruce is not entirely lacking in support by attending circumstances.

As we view this somewhat unusual case, when Mr. Smith failed to disclose to Mrs. Bruce that he was not the proprietor of the A & A Duraclean Service shop, but nevertheless assumed to act in its behalf, his status, so far as Mrs. Bruce was concerned, became at least analogous, if not tantamount, to that of an agent who has failed to disclose that he was acting on behalf of another or third party. The doctrine of undisclosed principal is well imbedded in the body of American Jurisprudence. In Restatement, Agency Second, § 322, p. 72, the rule is expressed as follows:

"An agent purporting to act upon his own account, but in fact making a contract on account of an undisclosed principal, is a party to the contract."

The liability of one who, while occupying the status of an agent, fails to disclose the fact of his agency or the identity of his principal to a third party who deals with him as a principal, and relies on him as such, is discussed in 3 C. J. S., Agency, § 216, p. 123, in these words:

"If his agency and the identity of his principal are unknown, an agent, to avoid personal liability on a contract to be entered into on behalf of his principal, has the duty to disclose both the fact that he is acting in a representative capacity and the identity of his principal, for the party dealt with is not required to discover or to make inquiries to discover such facts. . . ."

To similar effect, see discussion found in 3 Am. Jur. 2d, Agency, § 307, pp. 665, 666.

The rule is closely related to the doctrine of equitable estoppel which is designed to promote honesty and fair dealing between persons engaging in business and commercial transactions. We believe that equitable principles must not be denied fair and proper consideration under circumstances such as those which confront us in this case. In 28 Am. Jur. 2d, Estoppel and Waiver, § 67, p. 693, the author of the text recites:

"One who holds himself out as the owner of property may later be estopped to deny his ownership."

While it is true the record discloses no affirmative statements of ownership made by Mr. Smith to Mrs. Bruce, silence itself may give rise to an estoppel where, under the existing circumstances, there should have been a disclosure. Where a duty to speak exists, silence is tantamount to dissimulation. (28 Am. Jur. 2d, Estoppel and Waiver, § 53, pp. 665, 666.) We believe this rule fits the facts of this case.

We conclude that judgment was properly entered against the defendant E. C. Smith. The propriety of the judgment against Isaac Magdaleno is not before us, since he has not appealed.

The judgment of the court below is affirmed.