No. 55,755

LENTZ PLUMBING CO., RALPH STUMBAUGH, CONNER TILE & FLOOR COVERING, INC., *Appellants*, v. TOM FEE, JR., JERRY VICKERS, NANCY GLYNN, COUNTRY SHOWPLACE, INC., and KENNETH E. REEVES and GRETA REEVES, his wife, *Appellees*, and KENNETH E. REEVES, *Appellant*, v. TOM FEE, JR., JERRY VICKERS, NANCY GLYNN, and COUNTRY SHOWPLACE, INC., *Appellees*.

(679 P.2d 736)

Opinion filed April 3, 1984.

*James S. Willard*, of Scott, Quinlan & Hecht, of Topeka, argued the cause and

was on the brief for appellants Lentz Plumbing Company and Conner Tile & Floor Covering, Inc.

C. *Bruce Works,* of Topeka, argued the cause and was on the brief for appellant Ralph Stumbaugh.

*Bruce C. Harrington,* of Topeka, argued the cause and was on the brief for appellees Tom Fee, Jr., Jerry Vickers and Nancy Glynn.

*Hugh R. McCullough,* of Topeka, argued the cause and was on the briefs for appellant/appellee Kenneth E. Reeves.

The opinion of the court was delivered by

LOCKETT, J.: This appeal involves four cases consolidated for trial. Lentz Plumbing Company (Lentz), Conner Tile & Floor Covering, Inc. (Conner Tile), and Ralph Stumbaugh (Stumbaugh) furnished labor and materials to Country Showplace, Inc., a private club in Topeka, Kansas. Conner Tile and Stumbaugh appeal from the trial court's determination that Tom Fee, Jr. (Fee), president of Country Showplace, Inc. (Showplace), was not personally liable for the labor and materials supplied to Showplace. All three appellants appeal the trial court's failure to enforce their mechanic's liens against the property leased to Showplace for use as a private club. Kenneth E. Reeves (Reeves) owned the land where the private club was located. Mr. Reeves appeals from the trial court's denial of his fraud claim for damages against Fee.

Showplace was incorporated as a Kansas corporation May 15, 1977. In 1977, the corporation leased the building owned by Reeves for use as a 3.2 beer tavern. In 1978, Fee purchased 25% of the corporate stock of Showplace and became president of the corporation.

The corporation hired Ron Morey to manage the tavern. In 1979, the corporation determined it should change the image of the tavern. Morey convinced the board of directors of Showplace that Topeka had need for another private club. Morey was authorized by the corporation to renovate the premises. Morey contacted each of the plaintiffs and entered into separate oral contracts for material and labor to remodel the leased premises.

Between April, 1979, and September, 1979, each of the plaintiffs worked on the premises. Conner Tile installed carpeting and tile. The bill for labor and materials supplied by Conner Tile was $6,394.09. Lentz did various plumbing work on the building. Lentz' bill for labor and materials amounted to $1,156.72. Stumbaugh performed various carpentry jobs and

painting. Stumbaugh charged $6,000.00 for labor and materials. Each of the plaintiffs billed "Country Showplace" for payment.

On September 20, 1979, the stockholders of Showplace agreed to sell their stock to Morey. Showplace requested Reeves to allow it to assign the lease to Morey. Reeves would not approve assignment of the lease to Morey by Showplace. Reeves' refusal to allow the assignment of the lease to Morey halted the sale of the stock. Later in September, 1979, Morey rented a trailer, loaded Showplace's movable property into the trailer, and departed. Morey disappeared, never to be heard from again.

Showplace failed to pay its outstanding obligations. Reeves· changed the locks on the doors of the building, barring Showplace employees from entering. Showplace could not continue the business. Each plaintiff filed a mechanic's lien for the amount it claimed due from Showplace. Suits were filed and consolidated. Showplace filed for bankruptcy.

This matter was tried to the court. At the close of the trial, the court made findings of fact and conclusions of law, some of which are hereinafter set forth:

"1. Country Showplace, Inc., was . . . a Kansas corporation pursuant to Articles of Incorporation filed with the Secretary of State on May 15, 1977.

. . . .

"4. The corporation . . . has filed a bankruptcy . . . . The . . . plaintiffs were listed as creditors of the corporation and their claims have been discharged in bankruptcy.

"5. At the time of trial, counsel for the defendant, Country Showplace, Inc., confessed judgment as to the . . . claims of the . . . plaintiffs.

"6. That defendants, Vickers and Glynn, were at all times relevant herein officers and stockholders in Country Showplace, Inc.

. . . .

"8. . . . the defendants Reeves were the owners of the real estate commonly known as 8249 S.W. 10th Street, Topeka, Kansas. The real estate and improvements had been leased by Reeves to Country Showplace, Inc., that lease agreement specifically forbade any material improvements to the property without written permission of the landlord and forbade any improvements which would result in mechanic's liens without written permission and provided that the tenant was not to be considered an agent of the landlord.

"9. From about April, 1979, through September, 1979, each of the plaintiffs above named furnished labor and materials for the remodelling of the Country Showplace. The labor and materials furnished by the respective plaintiffs were, for the most part, ordered by Ronald Morey, who was acting as manager of Country Showplace, Inc. Morey directly supervised the remodelling of the premises and dictated what was to be done. The defendant Fee was at that time president of the corporation and had hired Morey as manager. He visited the

premises from time to time and presumably was aware of the nature and extent of the remodelling, although he denies authorizing Morey to incur some of the expenses for which the plaintiffs make claim.

"10. No evidence was presented by any party to connect the defendants, Vickers or Glynn, with any of the events in question.

"11. In late September or early October, 1979, when Country Showplace, Inc., had defaulted in rent payments under its lease, Reeves locked the parties out of the premises and took possession.

"12. Although the defendant, Kenneth Reeves, may have had some knowledge as to the improvements which were being added to the premises by plaintiffs, he did not authorize or consent to any of the improvements.

"13. There is no evidence to establish an agency relationship between the defendants Reeves and any of the other defendants.

"Based upon the foregoing findings of fact, the following are the Court's conclusions of law:

"1. The services and materials furnished by each of the above named plaintiffs were furnished to Country Showplace, Inc., and these plaintiffs have failed to establish facts sufficient to prove that the defendants, Fee, Vickers or Glynn, are individually liable, although they were officers and directors of the corporation.

"2. The plaintiffs have failed to establish facts to prove an agency relationship between the defendants Reeves and the other defendants.

"3. The mechanic's liens asserted by each of the above named plaintiffs are not enforceable against the defendants Reeves or the real estate owned by them for the reason that the labor and materials furnished by each of these plaintiffs was not furnished under a contract with the owners or their agent. The labor and materials in question were never requested or authorized by the defendants Reeves.

"4. The defendants Reeves have failed to establish by clear and convincing evidence their claims of fraud on the part of the defendant Fee.

"5. The individual defendants, Fee, Vickers and Glynn, are entitled to judgment in their favor as to the respective claims of the plaintiffs for labor and materials furnished.

"6. The defendants Reeves are entitled to judgment in their favor as to the claims of the plaintiffs above named for foreclosure of their respective mechanic's liens and these liens should be dismissed.

"7. The individual defendant Fee is entitled to judgment in his favor as to the claims of fraud by the cross claimants Reeves."

Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial, competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. In determining whether a trial court's findings of fact are supported by the evidence, it is not the function of an appellate court to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact. *Carpenter v. Riley,* 234 Kan. 758, 675 P.2d 900 (1984).

Conner Tile claims the trial court should have held Fee personally responsible for payment for the work it performed at Showplace. Conner testified that he had a discussion with Fee, a neighbor, while they were both working in their yards. Conner testified Fee stated during the conversation "I own the place," and that he had over $100,000.00 invested in the club. Fee denied stating he had spent $100,000.00 on the club. Essentially, Conner Tile argues Fee acted fraudulently and induced Conner Tile to perform work on the premises.

A corporate officer or director acting on behalf of a corporation is personally liable for damages caused by his willful participation in acts of fraud or deceit to one directly injured thereby. A corporate officer or director, actively participating in the fraud practiced on behalf of a corporation, cannot escape personal liability on the ground that he was acting for the corporation or that the corporation obtained the benefit therefrom. *Amoco Chemicals Corporation v. Bach,* 222 Kan. 589, Syl. ¶¶ 6, 7, 567 P.2d 1337 (1977).

The trial court determined that Fee had not stated he would be personally responsible for the carpet and labor furnished by Conner Tile. The court determined no fraud was committed by Fee. The existence of fraud is ordinarily a question of fact. Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with a disregard for truth, where another party justifiably relies on the statement and acts to his injury. *Nordstrom v. Miller,* 227 Kan. 59, Syl. ¶¶ 6, 9, 605 P.2d 545 (1980). The trial court's determination that Fee had not acted fraudulently is supported by the evidence.

Conner Tile and Stumbaugh contend Fee was personally responsible for their labor and material because Fee was an agent acting for an undisclosed principal, Showplace. The appellants rely on *Bruce v. Smith,* 204 Kan. 473, 476, 464 P.2d 224 (1970). The *Bruce* court stated an agent purporting to act upon his own account, but in fact making a contract on account of an undisclosed principal, is a party to the contract.

If his agency and the identity of his principal are unknown, an agent, to avoid personal liability on a contract to be entered into on behalf of his principal, has a duty to disclose both the fact that he is acting in a representative capacity and the identity of his

principal, for the party dealt with is not required to discover or make inquiries to discover such facts. *Bruce v. Smith,* 204 Kan. at 476.

In *Bruce,* the plaintiffs relied on statements made by the defendant Smith. Smith was identified as the owner and manager of the business. No existing circumstances revealed to the plaintiffs Smith had sold the business a month prior to his conversation with the plaintiffs. The court determined that the plaintiffs reasonably believed Smith was the proprietor of the business and dealt with him on that basis.

Where directors or officers of a corporation contract with a third person who is unaware of the existence of the corporation and to whom no disclosure of its existence is made, the director or officer is personally liable on the contract. 19 Am. Jur. 2d, Corporations § 1342.

The trial court found that the services and material supplied by Conner Tile and Stumbaugh were at the request of Showplace. Plaintiffs failed to establish facts sufficient to prove that the defendants, Fee, Vickers or Glynn, are individually liable, although they were officers and directors of the corporation. Evidence was introduced at the trial showing both Conner Tile and Stumbaugh had billed Country Showplace, the corporation, for their services. Further evidence was introduced to show that Stumbaugh had previously worked for Showplace. Stumbaugh had billed Showplace for his services and had been paid with a check drawn on the corporation.

Where the other party has actual knowledge of the agency and the identity of the principal, the agent will be relieved from liability, whether he himself makes the disclosure or the other party acquires the knowledge from some other source. 3 C.J.S., Agency § 369.

Whether or not the fact of the agency and the name of the principal were disclosed or known to the third party so as to protect the agency from personal liability on the transaction is essentially a question of fact which depends upon the circumstances surrounding a particular transaction. Such disclosure may, of course, be proven by direct evidence, but the disclosure, with the third person's knowledge, may be shown by circumstances surrounding the transaction and the course of dealing between the parties. 3 Am. Jur. 2d, Agency § 320. The trial court,

after hearing the facts in this matter, determined that Fee was not an agent acting for an undisclosed principal. Conner Tile and Stumbaugh both had knowledge of the circumstances surrounding the transaction and knew they were dealing with Showplace, a corporation. The trial court's finding was supported by the evidence.

Reeves appeals from the trial court's ruling that he did not prove his claim of fraud against Fee. Reeves argues that Fee made improvements to the building with no reasonable expectation of paying for them. Reeves suffered because of Fee's acts. The existence of fraud is ordinarily a question of fact to be determined by the trier of facts. The trial court, after hearing the evidence, determined Reeves had failed to establish by clear and convincing evidence his claim of fraud on the part of the defendant Fee.

Conner Tile and Lentz contend that their mechanic's liens should be enforced against Reeves' property leased to Showplace. They base their claim on the lease between Reeves, owner of the building, and Showplace, the tenant which had the work performed on the building. Plaintiffs claim as persons who had furnished labor, equipment, material or supplies which were used or consumed for improvements of real property, under a contract with the owner or his agent, and are thereby entitled to a lien upon the property for labor, equipment, material or supplies furnished, and for the cost of transporting the same. K.S.A. 60-1101.

Lessees often have been held to be agents for lessors in determining the enforceability of mechanic's liens against the lessor's property. *Lumber Co. v. Petroleum Co.*, 116 Kan. 78, 225 Pac. 744 (1924); *Brown v. Walker*, 100 Kan. 542, 164 Pac. 1092 (1917). The estate of the owner cannot be subjected to a lien for work done or materials furnished at the instance of the lessee unless the lessee may be regarded as an agent or trustee of the owner. Such may be express or implied from the conduct and acquiescence of the owner and from all the circumstances, which estop him from denying the agency. *Potter v. Conley*, 83 Kan. 676, 679, 112 Pac. 608 (1911).

It is not enough that the lessor should merely know that the improvements are being made by the lessee, nor that he should have agreed with him that the repairs or improvements are to be

made by the lessee, as that may be done for the convenience of the lessee and not because of any benefit to the lessor or his property. *Potter v. Conley*, 83 Kan. at 679-80. If the lessee acts for himself, no lien will attach to the property of the lessor. But where the owner rents his property to another and stipulates in the lease that improvements may be made on the property by the lessee, and the expense thereof deducted from the rentals to be paid him, the lessee may be regarded as the agent of the owner, and those doing the work and furnishing materials for improving the property will be entitled to a lien on the interest and estate of the lessee and the owner. 83 Kan. at 680.

In *Lumber Co. v. Band Co.*, 89 Kan. 788, Syl. ¶ 1, 132 Pac. 992 (1913), a short-term lease contained a provision authorizing the lessee to make repairs or improvements at his own expense but all the repairs, additions and materials became and remained the permanent fixtures to the building. The court held that provision, being for the lessor's benefit, thereby makes the lessee so far his agent as to entitle laborers and materialmen who furnish labor or materials in making the repairs or additions, under contract with the lessee, to a lien on the leased property for such labor or materials.

Here, the lease entered into between Reeves and Showplace required the corporation to keep the property repaired and to return the premises to the lessor in the same condition it was when the lease was executed. The corporation was allowed to remove any other property placed upon the leasehold after the lease had expired. Therefore, the present case is distinguishable from the cases the plaintiffs cite.

Each of the three plaintiffs claim a mechanic's lien upon Reeves' property. Each contends Reeves should be estopped from denying the validity of their mechanic's liens. Plaintiffs base their claim for liability upon Reeves due to the fact that Reeves was building a residence on property he owned immediately adjacent to the land occupied by Showplace. Plaintiffs contend that Reeves had ample opportunity to observe the improvements being made by Showplace upon the real estate which Reeves owned. The evidence presented at trial indicated that Reeves was on the premises leased to Showplace on one occasion while the remodeling was in progress. When Reeves reviewed the remodeling he inquired who was going to pay for

the work. There is no evidence that Reeves ever authorized the remodeling or agreed to be responsible for the cost of remodeling. Knowledge of labor and material being furnished is not alone sufficient to establish liability on the part of the owner. *Norris v. Nitsch,* 183 Kan. 86, 325 P.2d 326 (1958). A mechanic's lien is purely a creation of statute, and those claiming such a lien must bring themselves clearly within the provisions of the statute authorizing it.

Plaintiffs claim that Reeves was estopped from denying their right to place the mechanic's lien upon his property. Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. The party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. *Iola State Bank v. Biggs,* 233 Kan. 450, Syl. ¶ 4, 662 P.2d 563 (1983). The trial court determined that Reeves was not estopped from denying the plaintiffs' right to a mechanic's lien by his conduct. None of the plaintiffs had relied on any acts of Reeves.

Conner Tile and Lentz claim their mechanic's liens should attach to Reeves' property under the doctrine of merger of estates.

The general rule is where a mechanic's lien arises under a contract with a tenant, such lien attaches to the leasehold or tenant's estate only, and not to the reversion, fee, or the estate of the landlord. The rights of the mechanic's lien claimant can rise no higher than those of the person with whom he has contracted or to whom he has furnished labor or materials. A mechanic's lien which attaches to a leasehold is subject to all the conditions of the lease and subordinate to the rights of the lessor. Without the authority of the landlord, or his consent, or some act of the landlord to make his estate liable, a tenant cannot charge the land with a lien for labor or materials for constructing or improving a building thereon. Annot., 74 A.L.R.3d 330, 334.

Although a mechanic's lien when filed attaches only to an equitable or leasehold estate, it may be enforced against the fee

after the equitable and legal titles have merged or the leasehold has been merged in the fee by the acts of the landlord. However, equity will prevent or permit a merger, whichever will best serve the purpose of justice and the actual and just intent of the parties, so that whether in equity two estates will be held to have coalesced will depend on the facts and circumstances in a particular case. 74 A.L.R.3d at 335-36.

A merger of the leasehold and the fee, permitting enforcement against the fee of a lien against the leasehold, may be held to exist where a leasehold has been surrendered or abandoned after improvements have been made by the tenant and the landlord has taken possession and appropriated the leasehold interest, including the improvements to his own use and benefit, to the exclusion of the lien holder.

No Kansas cases are cited which follow the merger of estate rationale. Two leading cases cited by the appellants are both Nebraska cases.

In *Harte v. Shukert*, 94 Neb. 210, 142 N.W. 517 (1913), improvements were made upon the property at the direction of the lessee in contemplation that they would be used by the lessee during the term of the lease. The lessor knew what was being done by the lessee and the lien claimant. The lessor observed the progress of the work but stood by for more than a year and saw the improvements being added to the property at the rate of $1,000.00 per month. During the entire period of construction, no rent payment was ever made when due by the lessee. When the work on the improvements ceased, the lessor declared a forfeiture of the lease and took possession of the property including the improvements. The Nebraska court found that there were two estates, the fee and the leasehold. After the lessor assumed to forfeit the lease, he took possession of the premises and all the improvements made by the lessee and the lien claimant and ever since has used both estates as his own property. The court found that the lessor had not kept the estates separate and for the purpose of the land merged the leasehold and the fee due to his actions.

In *Waite Lumber Co., Inc. v. Masid Bros., Inc.*, 189 Neb. 10, 200 N.W.2d 119 (1972), 74 A.L.R.3d 320, the landlord leased his building to a tenant. Certain improvements were to be installed by the tenant; certain equipment and fixtures were to be

removed, but others could not be removed under the lease. The tenant entered into a contract for the improvements required. The tenant operated the business for about four months, and then unexpectedly abandoned the premises and took some of the equipment. The landlord locked the building, replaced the equipment and rented the premises to a similar operation. The landlord then claimed that the lien did not attach to the fee. The Nebraska court held that to allow the landlord to enrich himself at the expense of the lien claimants could produce an unconscionable result which equity would not permit. The court, applying the equitable doctrine of merger, held the landlord's fee was subject to the payment of the mechanic's lien even though the contracts for improvement of the premises were between the tenant and the contractors.

Here, appellants claim the lease was not yet in default under its provisions when the landlord secured the premises to his own use, precluding access by the tenant, thereby destroying the leasehold. Reeves had taken control of the premises, changed the locks on the building which precluded the tenant from entering the premises, and refused to allow Showplace to sell the business.

The trial court, after hearing the evidence, determined from the facts that the doctrine of merger of estates was not proper. The court found that the lease in question did not impose a duty upon the lessee to make improvements upon the leasehold nor was there any evidence reflecting that the lessee ever acted as an agent of the owner. There was no evidence to indicate that the lessor stood by until the improvements were completed, then terminated the lease to obtain the benefits of the lessee's contracts for remodeling. The court found that Reeves was entitled to reclaim the premises from Showplace because of its failure to pay the rent as required under the lease.

Each of the issues raised by the parties and decided by the trial court were dependent on the factual determination by the trial court. In reviewing the findings of the trial court to determine if they are supported by substantial evidence, a reviewing court considers the evidence favorable to the successful party. If there is substantial evidence to support the findings, it is of no consequence that there may have been contrary evidence adduced which if believed would have supported a different

finding. *Farmers State Bank of Ingalls v. Conrardy*, 215 Kan. 334, Syl. ¶ 1, 524 P.2d 690 (1974). Substantial evidence means evidence possessing something of substance and relevant consequence, and furnishes substantial basis of fact from which the issues can reasonably be resolved. *Mann v. Good*, 202 Kan. 631, Syl. ¶ 2, 451 P.2d 233 (1969). There was substantial evidence to support the trial court's findings in this case.

Judgment is affirmed.