NOT DESIGNATED FOR PUBLICATION

No. 120,917

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BEEF BELT, LLC,
*Appellee*,

v.

CAMPBELL BURGESS, d/b/a SOUTHWEST PLAIN BISON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Scott District Court; RICKLIN PIERCE, judge. Opinion filed November 8, 2019. Reversed and remanded with directions.

*Monte Vines*, of Adams Jones Law Firm, P.A., of Wichita, for appellant.

*Larry G. Michel*, of Kennedy Berkley Yarnevich & Williamson, Chartered, of Salina, for appellee.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM: Campbell Burgess was a manager and part owner of a limited liability company (LLC) informally known as Southwest Plain Bison (SWPB). SWPB had placed some bison with Beef Belt, LLC, for feeding and processing. After several months, SWPB became dissatisfied with Beef Belt and removed its bison without paying its bill in full. Beef Belt sued to recover the debt, arguing Burgess was liable on the contract as either the negotiating agent or the principal. Burgess moved for judgment as a matter of law a number of times at trial. The district court denied all his motions, and the jury entered a verdict in favor of Beef Belt. Burgess appeals. Because the district court

1

erred in denying Burgess' motions for judgment as a matter of law, we reverse and remand with directions that the district court enter judgment for Burgess.

Burgess was a manager and part owner of a Texas limited liability company formally named FCCTX, LLC-APB Series. FCCTX's informal name was SWPB. SWPB's business plan was to raise bison at two ranches in Texas. The Texas ranches did not have the proper facilities to handle bison, so they had to be upgraded. In the meantime, SWPB needed a feedlot to feed and process newly purchased bison. Burgess did not have much experience with bison, so he looked for an expert who could help. He found Tim Frasier, a consulting bison specialist, and Frasier offered to find a proper feedlot.

Frasier had had a positive experience with Beef Belt's feedlot before, so he contacted Beef Belt's general manager, Steven Landgraf. Frasier said he was with SWPB and they needed a place to custom feed and process bison. Landgraf was enthusiastic about getting their business, so Frasier made a personal trip to Beef Belt's feedlot to check it out. During the visit, Landgraf admitted he had limited knowledge about bison. Frasier said he could help. He also said SWPB expected him to visit the feedlot and give direction on the care and handling of its bison. Frasier ultimately recommended Beef Belt to SWPB for placement of its bison.

SWPB began buying bison and sending them to Beef Belt's feedlot. Burgess or Frasier would find the bison to buy. The bison were then paid for by checks or wire transfers from a checking account in the name of FCCTX, LLC-APB Series. Whenever SWPB bought new bison, Frasier would call Beef Belt to verify it could handle them before sending them.

SWPB's bison began arriving at Beef Belt in the fall of 2014. When the time came to send out the first invoice at the end of November 2014, Landgraf asked Frasier where

2

Beef Belt should send it. Frasier told him to send it to SWPB. When Landgraf asked for a point of contact, Frasier gave Burgess' name because that was Frasier's only point of contact for SWPB at that time. Based on Frasier's answer, Landgraf told his staff to address SWPB's monthly statements to "Southwest Plain Bison c/o Campbell Burgess."

Beef Belt's November and December invoices were paid with checks showing the name "FCCTX, LLC-APB Series" and signed by Burgess. A payment record attached to one of the checks listed Beef Belt's account number for SWPB, 2022. The checks were recorded in another statement as "CHECK FROM SW BISON" or "CHECK FROM SOUTHWEST." The account heading on that statement was "Southwest Plain Bison c/o Campbell Burgess." The address listed on the statement was the same as the address on FCCTX's checks.

Frasier soon became dissatisfied with Beef Belt's care and handling of SWPB's bison. Beef Belt had failed to follow Frasier's directions on several occasions. SWPB's bison also had over a 9% death loss, which Frasier said was unusually high. SWPB eventually decided to remove its bison from Beef Belt.

Soon after SWPB made the decision to remove its bison, Dominic Stephens replaced Landgraf as Beef Belt's manager in April 2015. Six to eight months after SWPB ended its relationship with Beef Belt, Stephens contacted Burgess about an outstanding bill of $89,528.19. Stephens remembered exchanging a couple of emails with Burgess in an attempt to collect payment. Stephens was willing to settle because of the high death loss among SWPB's bison and forwarded supporting documentation to Burgess. In contrast, Burgess remembered talking to Stephens on the phone. He asked Stephens to send some numbers to see if they could rectify the situation, but Stephens never did.

Beef Belt sued Burgess personally for breach of contract, listing him as "Campbell Burgess, d/b/a Southwest Plain Bison." Burgess moved to dismiss for lack of personal

3

jurisdiction. He argued he was a resident of Texas, and he had not entered into a contract in Kansas. Instead, Beef Belt's contract was with FCCTX, the owner of the bison. Beef Belt responded Burgess was a party to the contract as an agent for either an undisclosed or a partially disclosed principal. The district court denied Burgess' motion, explaining a factual dispute remained as to who the contracting parties were, and Beef Belt had made a prima facie case for personal jurisdiction.

The district court held a trial in January 2019. In its opening statement, Beef Belt laid out two legal theories: (1) SWPB was a trade name for Burgess and he personally owned the bison and thus was liable on the contract; and (2) Burgess was an agent for FCCTX and did not fully disclose his principal's identity and thus was liable on the contract. Burgess responded by arguing FCCTX owned the bison and Burgess fully disclosed his agent status and FCCTX's identity. Alternatively, Burgess argued he was not liable for the debt because Beef Belt had breached the contract, but this is not an issue on appeal.

As part of its case-in-chief, Beef Belt called Stephens. He testified Beef Belt did not use written contracts. Instead, it made oral agreements with the owners of the bison. The contracts were open-ended, and an owner could remove the animals at any time.

Stephens had access to all corporate records and documents. He was not aware of any disclosure to Beef Belt that anyone other than Burgess owned the bison. But the only record he found that Burgess was the owner was Beef Belt's account heading, "Southwest Plain Bison in care of Campbell Burgess." Stephens said it was not unusual for an entity other than the owner of the livestock to pay a bill, so a company check would not necessarily mean an individual did not own the bison.

After the close of Beef Belt's case-in-chief, Burgess moved for judgment as a matter of law. He argued Beef Belt had presented no evidence Burgess personally owned

4

the bison. Alternatively, if Burgess was an agent, he argued he had fully disclosed FCCTX as his principal. The district court denied the motion.

Burgess called three witnesses—Frasier, Landgraf, and himself. Burgess testified FCCTX owned the bison after purchase. He believed making a payment with company checks was his opportunity to provide Beef Belt with notice of FCCTX's identity since there was no written contract. He admitted no documentation was provided to Beef Belt identifying FCCTX other than those two checks. He also never told anyone at Beef Belt that FCCTX was the owner of the bison.

Burgess said Frasier made all the arrangements with Beef Belt and was responsible for dealing directly with it. Burgess remembered having only one conversation with Landgraf before deciding to send the bison to Beef Belt. Burgess had heard Beef Belt was feeding wild mustangs at its feedlot as part of a Bureau of Land Management program. The program was controversial, and Burgess was concerned about Beef Belt getting negative publicity. He talked with Landgraf about the care of the mustangs. Because SWPB was also looking for a feedlot with about a 2% death loss, Burgess suspected he also asked Landgraf if that was a reasonable expectation. Burgess thanked Landgraf for the information and told him Frasier would be getting back in touch with him soon.

Burgess recalled talking to Landgraf on one other occasion. A truck of SWPB bison showed up to Beef Belt but no one was there to unload them. Burgess called Landgraf a couple times to remedy the situation. Other than that, Burgess never called anyone at Beef Belt while SWPB's bison were there.

Frasier testified he did not recall ever telling Landgraf that Burgess owned the bison. Instead, he told Landgraf SWPB was "a group or a consortium . . . [of] financial people and interested parties."

5

Landgraf testified he understood Beef Belt to have oral agreements with the bison's owner, and in this case, SWPB was the bison's owner. Frasier had told him SWPB was "an associate or an employer or something like that who was interested in feeding buffalo." Landgraf only remembered talking to Burgess once when no one was at the feedlot to unload SWPB's bison. Landgraf did not know what connection Burgess had to SWPB.

At the close of Burgess' case-in-chief, Burgess renewed his motion for judgment as a matter of law. He incorporated his previous arguments but added that Frasier had testified he told Landgraf he was acting on behalf of SWPB. He did not tell Landgraf he was acting on behalf of Burgess, and Burgess' name only came up as a point of contact. Thus, no evidence showed Burgess was a contracting party. The district court denied the motion.

The jury entered a verdict in favor of Beef Belt for the full amount of its claim. After the verdict, Burgess again renewed his motion for judgment as a matter of law, and the district court again denied it. Burgess appeals.

*Did the District Court Err in Denying Burgess' Motions for Judgment as a Matter of Law?*

On appeal, Burgess argues the district court erred in denying his motions for judgment as a matter of law. As laid out in its opening statement, Beef Belt proceeded to trial on two legal theories: (1) Burgess entered the contract as the owner of the bison; and (2) Burgess was an agent acting on behalf of SWPB, and he did not fully disclose his principal's identity. Burgess argues the evidence was insufficient to support a jury verdict in favor of Beef Belt on either theory as a matter of law.

6

A district court's decision on a motion for judgment as a matter of law is reviewed de novo determining "whether evidence existed from which a reasonable jury 'could properly find a verdict for the nonmoving party.'" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015). When ruling on a motion for judgment as a matter of law, the district court is required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. This court must apply a similar analysis when reviewing the grant or denial of a motion for judgment as a matter of law. 301 Kan. at 766; *City of Neodesha v. BP Corporation*, 295 Kan. 298, 319, 287 P.3d 214 (2012).

*The Evidence Did Not Support a Finding That Burgess Personally Owned the Bison.*

First, Burgess argues the district court erred in denying his motions because no evidence supported the conclusion that he personally owned the bison. Beef Belt does not respond to this argument in its brief; it focuses solely on its theory that Burgess was an agent of FCCTX.

Beef Belt presented no direct evidence in its case-in-chief to support its claim that Burgess personally owned the bison, and it presented little in the way of circumstantial evidence. Stephens testified Beef Belt's account heading for SWPB was "Southwest Plain Bison in care of Campbell Burgess." While corporate checks were used to pay SWPB's November and December invoices, Burgess signed those checks. Burgess was the one Stephens talked to about collecting SWPB's debt.

In his defense, Burgess presented evidence directly contradicting Beef Belt's claim. Burgess testified he was part owner and manager of FCCTX, an LLC informally known as SWPB. He produced FCCTX's certificate of formation and separate series operating agreement. He also produced a bank account record showing he was authorized

to sign FCCTX's checks. He produced FCCTX checks used to purchase the bison, and he testified FCCTX owned the bison after purchase.

Based on this evidence, a reasonable jury could not have entered a verdict in favor of Beef Belt on this claim. Burgess testified he was the manager and part owner of SWPB, an LLC that owned the bison. Beef Belt's evidence about the account heading and checks were consistent with this testimony. And Beef Belt had no direct evidence to contradict Burgess' claims. As a result, the district court should have granted Burgess' motion for judgment as a matter of law on this theory.

*The Evidence Did Not Support a Finding That Burgess Entered a Contract on Behalf of an Undisclosed or Partially Disclosed Principal.*

Next, Burgess argues the evidence was insufficient as a matter of law to support a verdict that he was the agent of an undisclosed or partially disclosed principal. Agency refers to a fiduciary relationship in which a party, known as the principal, authorizes another party, known as the agent, to act on the principal's behalf, and the agent agrees to do so. *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 390, 710 P.2d 1297 (1985); see 3 Am. Jur. 2d, Agency § 1. An agent may be held personally liable on a contract entered into on the principal's behalf if that agent fails to disclose that he or she is an agent, or fails to fully disclose his or her principal's identity. *Lentz Plumbing Co. v. Fee*, 235 Kan. 266, 270-71, 679 P.2d 736 (1984); see 3 Am. Jur. 2d, Agency §§ 295, 296. Whether an agent's status or a principal's identity were disclosed to or known by a third party is a question of fact. *Lentz*, 235 Kan. at 271.

Burgess does not deny he was an agent for SWPB, meaning he was authorized to conduct business on SWPB's behalf. Instead, he argues he did not negotiate the Beef Belt contract. He states only an agent who enters into a contract or who negotiates a contract on the principal's behalf can be held personally liable on that contract. According to

8

Burgess, Beef Belt did not produce evidence Burgess negotiated or entered into the contract. Burgess produced evidence that Frasier was primarily responsible for all arrangements with Beef Belt. As a result, Burgess claims he cannot be held liable.

Burgess' argument has merit. Which agent entered the contract with Beef Belt is presumably a question of fact. See, e.g., *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 901, 220 P.3d 333 (2009) ("[W]hether a contract exists is a question of fact."); *Southwest & Assocs. Inc. v. Steven Enterprises*, 32 Kan. App. 2d 778, 780, 88 P.3d 1246 (2004) ("Whether a binding contract was entered into depends on the intention of the parties and is a question of fact."). But if no evidence is presented on a particular issue or the evidence is undisputed and reasonable people may not draw differing inferences, that issue becomes a question of law. *Scott v. Hughes*, 294 Kan. 403, 412, 275 P.3d 890 (2012).

Beef Belt bore the burden to prove Burgess was the agent who negotiated the contract. But it presented little evidence about the formation of the contract, and no evidence that Burgess negotiated the contract on behalf of SWPB. At best, the evidence suggests Frasier and Landgraf negotiated the contract, but even on this point the evidence is circumstantial. As a result, the district court should have granted Burgess' motions for judgment as a matter of law on this theory as well.

Beef Belt does not respond to this argument in its brief. Instead, it focuses solely on whether Burgess fully disclosed his principal's identity. But because Beef Belt failed to show Burgess entered into the contract on SWPB's behalf, it is unnecessary to reach this issue.

Likewise, it is unnecessary to reach Burgess' argument that insufficient evidence supported the verdict. That said, because there was no evidence from which a reasonable

9

jury could conclude Burgess was liable on the contract as the principal or the negotiating agent, the evidence was insufficient to support the verdict.

Reversed and remanded with directions to enter judgment in favor of Burgess.