No. 62,090

VERLYN D. OSBORNE, CAROL A. OSBORNE, GROVER D. OSBORNE, VIOLA L. OSBORNE, and LORI J. OSBORNE, *Appellants*, v. THE CITY OF MANHATTAN, KANSAS, A Municipal Corporation, *Appellee*.

(765 P.2d 1100)

Opinion filed December 9, 1988.

*Michael A. Preston*, of McDonald, Preston & Louk, Chartered, of Overland Park, argued the cause and was on the brief for the appellants.

*William L. Frost*, of Morrison, Frost and Olsen, of Manhattan, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, C. J.: The owners of certain real property in Manhattan, Kansas, Verlyn D. Osborne, Carol A. Osborne, Grover D. Osborne, Viola L. Osborne, and Lori J. Osborne, appeal from the award for the right of access to their property which was condemned by the City of Manhattan.

The City filed a petition in the District Court of Riley County on September 18, 1985, wherein the City sought to acquire by condemnation all rights of access from the Osborne property to the El Paso Street right-of-way. The Osbornes appealed from the award of the court-appointed appraisers to the District Court of Riley County. Prior to trial, the court sustained the City's motion in limine. The effect of that ruling was to prohibit the owners from introducing evidence of damages that they claim result from the acquisition of access which restricts the use of certain commercial storage units on their property facing El Paso Street. The owners then attempted to take an interlocutory appeal under K.S.A. 1987 Supp. 60-2102(b). Within ten days of the entry of an appropriate order by the trial judge, the owners applied to the

Court of Appeals for leave to take an interlocutory appeal. That application was denied.

The parties then entered into a stipulation as to the before and after value of the owners' property, with the difference being $4,200. The sum so agreed upon was the exact amount as the damages fixed by the court-appointed appraisers. The stipulation was made contingent upon the validity of the trial court's order of August 20, 1987, sustaining the City's motion in limine. The stipulation provides:

"That should such Order be reversed by the district court or any appellate court, then this stipulation is considered to be null and void as between the parties."

The trial court entered judgment and taxed costs and expenses equally to the parties pursuant to the stipulation, and the owners appeal. The issues are:

1. Whether the landowners are entitled to introduce evidence and have considered as a factor in determining just compensation their resulting lack of access to storage units facing an adjacent platted street (El Paso Street) which was previously unimproved.

2. Whether the condemnor is estopped from denying compensation for the taking of access to the storage units when the City approved construction of the units and use of the property in such a manner.

A brief statement of the factual background is necessary. The Osbornes own certain realty which is used for commercial purposes. The property is now and has at all times been accessible to the public from Yuma Street on the north, and from Fort Riley Boulevard at the northwest corner of the tract. El Paso Street, which runs along the south boundary of the owners' property, was included within the original plat of Manhattan. The El Paso Street right-of-way, however, was subject to a franchise agreement with the Rock Island Railroad until shortly before this condemnation proceeding was filed. El Paso Street has never been improved, and there are no outlets to other streets from El Paso Street. Thus, one could enter the El Paso Street right-of-way from the Osborne tract, but could not proceed anywhere except to return to the Osborne land.

In 1976, the Osbornes' predecessors applied to the City for a zoning variance allowing construction on the land of a storage

building without any setback from the El Paso Street right-of-way. The drawing submitted to the City did not show that there were to be any entrances along the rear of the building facing the El Paso Street right-of-way. After the setback variance was granted, the owners built a storage building which contains some 60 separate storage spaces or units for rental to the public. The south property line of the land extends along the El Paso Street right-of-way for a distance of approximately 280 feet. The storage building, approximately 230 feet long, was constructed parallel to the south lot line and sets back only about 3.5 feet from El Paso Street. Twelve of the rental units are on the south side of the building, and the only entrance into each of these units faces the right-of-way. In order to utilize these units, the owners poured a concrete pad approximately 9 feet wide and most of the length of the storage building. This pad is situated partly on the 3.5-foot setback, which is part of the owners' property, and partly on the El Paso Street right-of-way. The doors to the twelve rental units facing El Paso appear to be about 15 feet apart and are spaced across the entire length of the building. In order to utilize these units, one was required to enter the owners' property from either Yuma Street or Fort Riley Boulevard, cross the owners' property, drive around the end of the storage building and onto the concrete pad, and then proceed along the concrete pad to the entrance into the particular storage unit.

Several years after the storage building was completed, the owners petitioned the City to permit the construction of a car wash on their property. The drawing which accompanied the car wash application shows that some of the storage units, which had already been built, open towards the El Paso Street right-of-way. The car wash, which was the subject of that petition, is situated some distance north of the El Paso Street right-of-way and does not open onto it.

The trial court, in granting the City's motion in limine, said:

"A. That the landowners' use of the platted, but unimproved, El Paso Street right-of-way, prior to the date of taking was not for the purpose of access to the landowners' property, but rather was a use of the right-of-way which amounted to an extension of landowners' property and as such consisted of an encroachment upon the right-of-way that was subject to termination by the city at any time.

"B. That although the city may have granted the landowners or their predecessors a front yard variance to construct the storage units up to the right-of-way of El Paso and the city has never restricted the landowners' use or lessees' use of

the right-of-way of El Paso Street to utilize the storage units, the doctrines of laches and estoppel do not operate against the condemnor in this matter to prevent the termination of landowners' use of the right-of-way.

"C. That the landowners are not entitled to compensation for the loss of their use of the right-of-way in the manner which it was used prior to the date of taking.

"IT IS THEREFORE THE ORDER, JUDGMENT AND DECREE OF THE COURT that the City's Motion in Limine is hereby granted. That all parties are hereby prohibited from introducing any testimony, evidence or opinions of value which are based upon the landowners' use of the platted El Paso Street right-of-way adjacent to the subject property prior to the date of taking or the loss of that subsequent to the date of taking, in the trial of this matter."

We turn first to the estoppel issue. The owners contend that the City should not be allowed to object to evidence as to the owners' prior use of the El Paso Street right-of-way because of certain actions of the City. In 1976, the City approved a variance and issued a building permit allowing construction of the storage building within 3.5 feet of the right-of-way. The plans submitted by the landowners, however, did not indicate that any openings into the building would face El Paso Street. The City had no knowledge of the landowners' plans to face the only doors into certain rental units toward El Paso Street. There was no affirmative action by the City inducing the landowners to take such action. There being no knowledge and no affirmative action by the City, and no reliance upon the City's action by the landowners, the estoppel claim cannot stand. See *Lines v. City of Topeka*, 223 Kan. 772, 577 P.2d 42 (1978); *Benson v. City of DeSoto*, 212 Kan. 415, 510 P.2d 1281 (1973); *Derby Oil Co. v. City of Oxford*, 134 Kan. 59, 4 P.2d 435 (1931). Further, as we said in *City of Emporia v. Humphrey*, 132 Kan. 682, Syl. ¶ 5, 297 Pac. 712 (1931):

"Laches and estoppel do not operate against the state, or its political subdivisions, so as to defeat the right of the public to the use of city streets, nor bar the right of the city to abate unlawful encroachments thereon."

We now turn to the principal issue, that of whether the owners were entitled to introduce evidence and have considered as a factor in determining just compensation their inability to have continued access to each of the storage units which extend across most of the width of their property and face the El Paso Street right-of-way.

In *Teachers Insurance & Annuity Ass'n of America v. City of Wichita*, 221 Kan. 325, Syl. ¶ 6, 559 P.2d 347 (1977), we defined access. We said:

"Access may be defined as the right vested in the owner of land which adjoins a road or other highway to go and return from his own land to the road or highway without unreasonable interference. Such a right to be of any substantial utility must necessarily include the owner's invitees and licensees."

In *Smith v. State Highway Commission*, 185 Kan. 445, 463, 346 P.2d 259 (1959), Justice Fatzer, in his dissent, commented on access as follows:

"Recognized authorities state that, among other things, the right of access includes the right to use the street and highway as an outlet from the abutting property to a connecting highway by any mode of travel or conveyance appropriate to a highway, that is, the right of ingress and egress from the property which abuts upon an existing street or highway, thus enabling the owner to enter and leave his premises by way of the public highway and establishes the accessibility of his premises for his patrons, clients and customers; also, the right to use the street in front of the property in connection with the use and enjoyment of it in such manner as is customary and reasonable. In other words, the right of access is an 'easement appurtenant' which is justified upon the grounds of necessity *and is such as is reasonably necessary for the enjoyment of the land for all purposes for which it is adapted.*"

The following definition of access is found in Annot., 73 A.L.R.2d 652, 655:

"By 'access' is meant an abutter's means of ingress and egress, directly to and from his property . . . ."

Black's Law Dictionary 13 (5th ed. 1979) defines access as follows:

"In real property law, the term 'access' denotes the right vested in the owner of land which adjoins a road or other highway to go and return from his own land to the highway without obstruction."

In 39 Am. Jur. 2d, Highways, Streets, and Bridges § 178, pp. 552-53, it is said:

"The right of access to and from a public highway or street is a natural easement and one of the incidents of the ownership or occupancy of land abutting thereon . . . . [While there are cases holding to the contrary,] the general rule is that an abutting owner or occupant is not entitled to access to his land at every point between it and the highway but only to reasonable and convenient access to his property and the improvements on it."

Also, in the majority opinion in *Smith v. State Highway Commission*, 185 Kan. at 451-53, we stated the general rules with regard to the taking of rights of access. We said:

"It has consistently been held in this jurisdiction the right of access to and from an existing public street or highway is one of the incidents of ownership of

land abutting thereon, sometimes called a common law right of access, which may not be taken from the owner by the public without just compensation. ([*C. B. U. P. Rld. Co. v. Andrews*, 30 Kan. 590, 2 Pac. 677 (1883); *Highbarger v.*] *Milford*, 71 Kan. 331, 80 Pac. 633 [1905]; *Longnecker v. Railroad Co.*, 80 Kan. 413, 102 Pac. 492 [1909]; *Simmons v. State Highway Commission*, 178 Kan. 26, 283 P.2d 392 [1955]; *Atkinson v. State Highway Commission*, 184 Kan. 658, 339 P.2d 334 [1959]; and see, *Ruthstrom v. Peterson*, 72 Kan. 679, 83 Pac. 825 [1905], and G. S. 1957 Supp. 68-1903.)

. . . .

"While the entire access of an abutting property owner on an existing highway may not be cut off, generally an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway. The use of streets and highways may be regulated and restricted by the public authority in the exercise of the police power to the extent necessary to provide for and promote the safety, peace, health, morals and general welfare of the people."

See *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, 524 P.2d 1165 (1974); *Brock v. State Highway Commission*, 195 Kan. 361, 404 P.2d 934 (1965).

Ingress and egress to and from the Osborne tract has traditionally been by way of street right-of-ways which are not involved in this proceeding and which remain unchanged: Yuma Street and Fort Riley Boulevard. The El Paso Street right-of-way, on the other hand, has not provided a way by which the owners of the tract and their customers and others may leave or enter the Osborne land from other areas of the City. We agree with the trial court that the Osbornes' use of the El Paso Street right-of-way amounted to an extension of the Osbornes' property. They used that right-of-way as though it had been vacated and constituted an extension of their own land. The concrete pad constituted a physical encroachment upon the street right-of-way, but the pad is not here involved inasmuch as the City is not now seeking to cause the owners to remove it.

The Osbornes were using virtually all points along the boundary of their land to provide access to their storage units. They are entitled to make reasonable use of the adjoining street, but under the authorities cited above they are not entitled to access at every point along the El Paso Street right-of-way. They are thus entitled to be paid for the loss of reasonable access only, not for access at every point, or twelve different points of the owners' selection, along the right-of-way.

The trial court was correct in sustaining the City's motion in limine and in restricting the admission of evidence of the owners' prior use of the El Paso Street right-of-way to provide

access to each of the small storage units spaced along the length of the right-of-way as evidence of value. The parties have stipulated as to the sum to be recovered for loss of reasonable access, and the trial court properly entered judgment in that amount.

The judgment is affirmed.