No. 65,678

Kansas City Heartland Construction Company, *Plaintiff/Appellee*, v. Maggie Jones Southport Cafe, Inc., *Defendant*, and 95th & Nall Associates, *Defendant/Appellant*.

(824 P.2d 926)

Opinion filed January 17, 1992.

*Kenton C. Granger*, of Niewald, Waldeck & Brown, of Kansas City, Missouri, argued the cause, and *Byron C. Loudon*, of McDowell, Rice & Smith, Chartered, of Kansas City, and *Kip A. Stetzler*, of the same firm, were on the briefs for appellant.

*James F. McMahon*, of McConnell & McMahon, of Overland Park, argued the cause, and *D. Tiday*, of Shawnee Mission, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This appeal involves an action to enforce a mechanic's lien.

The record before us is not lengthy, and many of the dispositive facts are not in dispute. Maggie Jones Southport Cafe, Inc., (Maggie Jones) leased real estate from 95th & Nall Associates (95th & Nall), which owns a shopping center, to open and operate a restaurant. The leased space previously had been used as a restaurant.

To operate the restaurant, Maggie Jones obtained a Small Business Administration (SBA) loan, which was secured by the leasehold improvements. Maggie Jones contracted with Kansas City Heartland Construction Company (Heartland) for Heartland to renovate the restaurant site. Heartland was aware Maggie Jones leased the restaurant site from 95th & Nall.

Maggie Jones became insolvent. At the time Maggie Jones filed bankruptcy, it owed Heartland $104,000.

95th & Nall did not realize Maggie Jones owed money to any contractors until after the restaurant closed. Shortly thereafter, 95th & Nall received notice the SBA would be enforcing its

secured interest in the improvements through a public auction. A public auction was held.

The last work performed by Heartland was on March 26, 1987. On July 16, 1987, Heartland filed its lien statements against Maggie Jones and 95th & Nall.

Approximately one year later, on July 19, 1988, Heartland filed this cause of action to foreclose on the liens. Because Maggie Jones had filed for bankruptcy, it was not served and was only a nominal party to the action. Heartland obtained relief from the automatic bankruptcy stay to pursue this action.

After a bench trial on May 21, 1990, the trial court ruled in favor of Heartland, ordering 95th & Nall to pay "the sum of $104,000, with prejudgment interest of $32,933 thereon for a total judgment of $136,933 plus interest at the legal rate from the date of judgment and for the further sum of $75 for title evidence." The Court of Appeals affirmed that judgment. We granted review.

The issue before this court is whether Maggie Jones acted as 95th & Nall's agent. The answer resolves whether the mechanic's lien filed by Heartland attached to 95th & Nall's real estate. "A mechanic's lien is purely a creation of statute, and those claiming such a lien must bring themselves clearly within the provisions of the statute authorizing it." *Lentz Plumbing Co. v. Fee*, 235 Kan. 266, 274, 679 P.2d 736 (1984).

Heartland argues that Maggie Jones acted as the agent for 95th & Nall, thus bringing the lien within the purview of K.S.A. 60-1101 and K.S.A. 60-1102. The statutes, in pertinent part, provide:

"Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with *the owner or with the trustee, agent or spouse of the owner*, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same." K.S.A. 60-1101. (Emphasis supplied.)

"Any person claiming a lien on real property, under the provisions of K.S.A. 60-1101, shall file with the clerk of the district court of the county in which property is located, within *four (4) months* after the date material, equipment or supplies, used or consumed was last furnished or last labor performed under the contract . . . ." K.S.A. 60-1102(a). (Emphasis supplied.)

If Maggie Jones was acting as 95th & Nall's agent, then K.S.A. 60-1101 governs Heartland's lien and Heartland had four months

to file its lien statement. If K.S.A. 60-1101 governs, then Heartland met its filing deadline.

In *Lentz Plumbing Co. v. Fee*, 235 Kan. 266, this court addressed mechanics' liens in the landlord-tenant context. In *Lentz*, Country Showplace, Inc., a Kansas corporation, leased a building owned by Kenneth Reeves for use as a 3.2 beer tavern. The lease specified that Reeves had to approve any material change to the building in writing and that the tenant was not the landlord's agent. The corporation authorized the manager of the tavern to convert the tavern into a private club. The manager contracted with several companies to renovate the building. The companies billed Showplace. The manager subsequently absconded with all of Showplace's movable property, including leasehold improvements. Reeves took possession of the building when Showplace defaulted on rent payments. Showplace eventually filed for bankruptcy.

The trial court refused to enforce the mechanics' liens against Reeves. The trial court found there was no evidence to support an agency relationship between Reeves, as the landlord, and any of the tenants. Although Reeves knew of the renovation, he had not authorized nor consented to the changes. In affirming the trial court, this court stated:

"The general rule is where a mechanic's lien arises under a contract with a tenant, such lien attaches to the leasehold or tenant's estate only, and not to the reversion, fee, or the estate of the landlord. The rights of the mechanic's lien claimant can rise no higher than those of the person with whom he has contracted or to whom he has furnished labor or materials. . . . *Without the authority of the landlord, or his consent, or some act of the landlord to make his estate liable*, a tenant cannot charge the land with a lien for labor or materials for constructing or improving a building thereon. [Citation omitted.]" 235 Kan. at 274. (Emphasis supplied.)
"The estate of the owner cannot be subjected to a lien for work done or materials furnished at the instance of the lessee *unless the lessee may be regarded as an agent or trustee of the owner*. Such may be express or implied from the conduct and acquiescence of the owner and from all the circumstances, which estop [the landlord] from denying the agency. [Citation omitted.]" 235 Kan. at 272. (Emphasis supplied.)

The question then is whether Maggie Jones had express or implied authority to act as the agent for 95th & Nall. This court's scope of review is well established:

"Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial, competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. In determining whether a trial court's findings of fact are supported by the evidence, it is not the function of an appellate court to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact. [Citation omitted.]" *Lentz,* 235 Kan. at 269.

The trial court never directly addressed whether an agency relationship existed between Maggie Jones and 95th & Nall. As will be discussed later, the trial court apparently based its ruling on a finding of implied agency.

An agent has express authority if "the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act." *Mohr v. State Bank of Stanley,* 241 Kan. 42, 45, 734 P.2d 1071 (1987). Here, there is no evidence to support an express agency. Article 26 in the lease between Maggie Jones and 95th & Nall specifically stated that "[t]his Lease does not create the relationship of principal and agent . . . the sole relationship between Landlord and Tenant being that of landlord and tenant . . . ." Furthermore, according to testimony at trial, there was no written (or implied) agreement between Maggie Jones and 95th & Nall that Maggie Jones would act as 95th & Nall's agent. Larry Gaines, President of Maggie Jones, never represented himself or Maggie Jones as the agent of 95th & Nall. Reginald Armstrong, managing partner of 95th & Nall, never authorized Gaines to act as 95th & Nall's agent. Additionally, Gaines understood from the beginning that Maggie Jones was responsible for paying for improvements to the property.

The evidence does not support a finding of express agency; the question remaining is whether an implied agency existed on these facts.

" ' "On the question of implied agency, it is the manifestation of the alleged principal and agent as between themselves that is decisive, and not the appearance to a third party or what the third party should have known. An agency will not be inferred because a third person assumed that it existed . . . ." '

. . . .

"Implied agency is based on an implied intention to create an agency. It arises upon facts for which the principal is responsible. It arises when, from

the statements and conduct of the parties, it appears that the principal, or the principal and the 'agent,' intended to make it appear to others that the acts of the 'agent' were authorized by the principal." 241 Kan. at 46.

95th & Nall argues that because the trial court did not make a specific finding regarding agency, the trial court must have ruled "the landlord's *knowledge* of the construction and *implied authorization* of the work created an agency relationship sufficient to satisfy K.S.A. 60-1101." The trial court in this case noted:

"The lease itself clearly indicates that the tenant was to take the property as is. It further clearly indicates that the tenant had until October 1, 1986 to complete leasehold improvements that were deemed to be necessary, and a requirement that the tenant obtain the landlord's approval prior to making changes or improvements. It is clear that the landlord had knowledge of the improvements and granted permission to make the improvements, and that of course is construed according to law."

The Court of Appeals disputed 95th & Nall's argument that "*Lentz* precludes any material improvement to the leased property without prior *written* permission of the lessor." 95th & Nall claimed that because it did not give prior written approval, Heartland's lien did not attach to 95th & Nall's property. The Court of Appeals incorrectly stated that the lease only required prior approval, not prior written approval. Exhibit B of the lease provided that "Tenant shall obtain Landlord's approval prior to making said changes or improvements." Article 29 specified that "[w]henever under this Lease, provision is made for Tenant securing the consent or approval by Landlord, such consent or approval shall be in writing."

In support of its conclusion that Maggie Jones was acting as the agent of 95th & Nall, the Court of Appeals noted:

"Although the [trial] court did not specifically mention it, the lease in question also included a provision that required the lessee to surrender all improvements to the lessor upon termination of the lease. Since all improvements were to be surrendered under the lease, the lessee becomes the lessor's agent and a mechanic's lien can attach to the lessor's real estate. *Lentz*, 235 Kan. at 273. Arguably, this is exactly what the district court meant when it held:

" 'The Court finds and determines that the owner of the property knew and authorized the building of improvements and within the use and meaning of the lien statutes of the State of Kansas must be held responsible for judgment in this case in the amount of the prayer.' "

The lease, however, did not require Maggie Jones to surrender *all* improvements. Article 23 authorized Maggie Jones to remove any trade fixtures, signs, or carpeting from the premises.

"ARTICLE 23. SURRENDER. . . . On or before the last day of the term or the sooner termination thereof, Tenant shall at its expense, remove its trade fixtures, signs and carpeting from the leased premises and any property not removed shall be deemed abandoned. Any damage caused by Tenant in the removal of such items shall be repaired by and at Tenant's expense. All alterations, additions, improvements and fixtures (other than Tenant's trade fixtures, signs and carpeting) which have been installed or made by either Landlord or Tenant upon the leased premises and all hard surface bonded or adhesively affixed flooring shall remain upon and be surrendered with leased premises as a part thereof . . . ."

The Court of Appeals' cite to *Lentz* is evidently in reference to the *Lentz* court's discussion of *Lumber Co. v. Band Co.*, 89 Kan. 788, Syl. ¶ 1, 132 Pac. 992 (1913), a case involving a short-term lease in which the tenant could make improvements at the tenant's expense, but all such improvements became permanent fixtures. Because the landlord benefited from the improvements, this court held that in the context of mechanics' liens, such a provision made the tenant the landlord's agent. This court, however, went on to hold that if the tenant is "allowed to remove any other property placed upon the leasehold after the lease had expired," a different result is reached. *Lentz*, 235 Kan. at 273. In *Lentz*, the lessee was to return the property in the same condition as when the lease was executed and could remove "any other property."

In addition, in the case at hand, unlike *Lumber Co.*, the trial court specifically found that "the landlord did not receive any benefit from the extensive leasehold improvements made." Thus, *Lumber Co.* does not control on these facts.

Heartland contends "the Court of Appeals erred when it found that the District Court specifically ruled, 'the landlord did not receive any benefit from the extensive leasehold improvements made.' " Heartland maintains that the actual statement made by the trial court is as follows: "The landlord *did receive* any benefit from the extensive leasehold improvements made." (Emphasis added by Heartland.) Heartland does not cite to the record to

support its contention. Heartland, however, can be referring only to page three of the Partial Transcript of Proceedings.

The original partial transcript furnished to this court shows the word "not" has been written in by hand and initialed by the official court reporter so that the phrase reads, "The landlord did *not* receive any benefit . . . ." (Emphasis supplied.) Apparently, Heartland did not receive a corrected copy of the transcript.

The trial court's conclusion that Heartland's lien attached to 95th & Nall's real estate because 95th & Nall knew and authorized Maggie Jones to remodel if it wished to do so is not consistent with *Lentz*.

> "It is not enough that the lessor should merely know that the improvements are being made by the lessee, nor that he should have agreed with him that the repairs or improvements are to be made by the lessee, as that may be done for the convenience of the lessee and not because of any benefit to the lessor or his property. [Citation omitted.] If the lessee acts for himself, no lien will attach to the property of the lessor. But where the owner rents his property to another and stipulates in the lease that improvements may be made on the property by the lessee, and the expense thereof deducted from the rentals to be paid him, the lessee may be regarded as the agent of the owner, and those doing the work and furnishing materials for improving the property will be entitled to a lien on the interest and estate of the lessee and the owner. [Citation omitted.]" 235 Kan. at 272-73.

According to the *Lentz* court, the crux of the matter is whether the landlord benefited from the improvements. Here, the trial court's finding that 95th & Nall did not benefit from the renovations is supported by substantial competent evidence. When Maggie Jones went bankrupt, the SBA enforced its secured interest in the improvements through a public auction.

Article 36 of the lease specified that in terms of liens, 95th & Nall would have a subordinate position. This was done so that lessee could obtain an SBA loan. At the time of the sale, the new tenant of the restaurant property made arrangements to buy some of the leasehold improvements from the SBA; the new tenant did not purchase the improvements from 95th & Nall. The SBA also financed the new tenant and when the new tenant subsequently went bankrupt, the SBA again held a public auction. This time, the interior was gutted. The trial court's finding that

95th & Nall did not benefit from the improvements made to the property is supported by substantial competent evidence.

Heartland next contends that, pursuant to Article 36:

"[t]he lien provision does not extend to any permanent fixtures or permanent improvements to the real estate. . . . The landlord, upon retaking of the premises and determination of the lease, obtained all of the improvements to the real estate. The property was relet with the improvements which included painting, repair to the roof, electrical upgrading, heating and air-conditioning, flood control, handicap installation, repair and improvement of the restrooms, and numerous other items specified in the lien statement. These improvements were to the real estate and attached to it and were not subject to any lien by the SBA."

Heartland does not cite to the record to support this contention, as required by court rules. We do not find this information in the record before us.

Heartland also argues that Gaines' testimony supports finding that 95th & Nall assumed authority for the renovations by abating rent while renovations were being completed. Heartland claims Article 3 of the lease provided for abatement of rent. Article 3, in pertinent part, stated:

"Failure of Landlord to deliver possession of the premises at the date her-einabove provided, shall postpone the date of commencement of the term of this Lease and shall extend the date of the end of such term by periods equal to those which shall have elapsed between and including the date hereinabove specified for [commencement] on the date when possession of the premises is delivered by Landlord to Tenant, provided that Tenant may occupy the premises without payment of minimum rent for a period of not to exceed 30 days after written notice from Landlord that the premises are ready for such occupancy, for the sole purpose of the Tenant installing fixture, facilities, mechanical equipment and performing finishing work . . . ."

Gaines testified that 95th & Nall extended the due date for rent payments because the restaurant was not ready to open as scheduled. He did not remember how much time was involved, but testified Maggie Jones paid rent before the restaurant opened.

95th & Nall did not assume authority for payment of the renovations by abating rent. Article 1 specified that Maggie Jones agreed to pay the designated rent without "set-off or deduction." Exhibit B to the lease specified that Maggie Jones accepted the premises "as is" and that Maggie Jones solely was responsible for

renovation costs. Article 17 also provided that Maggie Jones would pay all renovation costs.

The record does not support a finding that by their statements and conduct, 95th & Nall, or 95th & Nall and Maggie Jones, intended to create an agency. Additionally, neither apparent agency nor equitable estoppel are applicable here.

"Apparent [or ostensible] agency is based on intentional actions or words of the principal toward third parties which reasonably induce or permit third parties to believe that an agency relationship exists." *Mohr*, 241 Kan. at 46.

"A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *Lines v. City of Topeka*, 223 Kan. 772, Syl. ¶ 4, 577 P.2d 42 (1978).

See *Osborne v. City of Manhattan*, 244 Kan. 107, 110, 765 P.2d 1100 (1988).

Mike White, a general contractor doing business as Heartland, testified he negotiated and contracted with Gaines for Heartland to do the remodeling. White did not negotiate with 95th & Nall. White did not ask 95th & Nall to approve any of the work. Any payments Heartland or subcontractors received were received from Maggie Jones. In fact, 95th & Nall only became aware that Heartland was doing the renovation work when the work was halfway completed.

White testified he discussed work with Armstrong regarding an exterior paint job. (The lease specified that 95th & Nall was responsible for this work.) That discussion involved both Gaines and Armstrong. Gaines, not Armstrong, authorized White to go ahead with the paint job, which only cost a few hundred dollars. Armstrong subsequently reimbursed Maggie Jones for the paint job, and Maggie Jones paid Heartland. Armstrong did not remember the conversation with White.

White, as Heartland's representative, was not induced to enter into the contract with Maggie Jones because of an alleged agency. White also did not rely in any way upon an alleged agency. White never saw the lease between Maggie Jones and 95th & Nall.

Although agency also can be established by ratification, the record does not support such a finding. 95th & Nall did not ratify

the contract between Maggie Jones and Heartland. See *Rogers v. Beiderwell*, 175 Kan. 223, Syl. ¶ 4, 262 P.2d 814 (1953) (ratification defined).

There is not substantial competent evidence to support a finding that Maggie Jones acted as the agent for 95th & Nall. Consequently, the trial court's and the Court of Appeals' conclusions of law are erroneous.

We reverse the Court of Appeals and the trial court.