No. 69,185

MANHATTAN MALL COMPANY, *Appellee*, v. ERNEST SHULT, *et al.*,
*Appellants.*

(864 P.2d 1136)

Opinion filed December 10, 1993.

*Robert C. Johnson*, of Herington, argued the cause and was on the brief for appellant.

*Edward L. Bailey*, of Cosgrove, Webb & Oman, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a K.S.A. 1992 Supp. 60-1102 mechanic's lien case. The controlling issue is whether the lien was timely filed.

Manhattan Mall Company (the Company) sued to remove the cloud of a mechanic's lien on an abandoned leasehold interest in a shopping mall. The trial court ruled that the lien filed by Alan J. Hastings, an architect contractor and one of the defendants in the lien foreclosure action, was not timely filed. The trial court

also ruled that the lien only applied to a leasehold interest. We have jurisdiction under K.S.A. 20-3018(c) (transfer from the Court of Appeals on motion of this court).

The applicable standard of review requires us to determine whether the trial court's findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, Syl. ¶ 1, 855 P.2d 929 (1993). We find no error and affirm.

## Facts

The Company, a general partnership, is the managing partner in and general partner of Manhattan Mall Associates, L.P. (MMA), a limited partnership. MMA was the record owner of a portion of the leasehold estate in a city owned shopping mall, Manhattan Town Center (Mall), located in Manhattan, Kansas.

Ernest and Jiang Shult entered into a lease agreement with MMA acting through the Company. Separate leasing and management entities were involved. We shall refer to the Company as representative of the interest adverse to Hastings. The Shults leased a store space in the Mall. The lease agreement authorized the Shults to make improvements in the leased space, subject to the general mall construction requirements set forth in a tenant handbook and the local city building code requirements. The lease required the approval by the lessor and its agents of all proposed improvements. The lease stated that the lessor was not a party to or part of any tenant improvements and that the lessor had no responsibility for liens.

The Shults contracted with Hastings to provide the design, labor, and materials for the construction of improvements in the leased space for a price of $47,550. Hastings met with the general manager and the operations manager of the Mall. Hastings was informed that the Mall was interested in conformity with Mall and city requirements and that the various Mall entities were not parties to or involved in the contract between Hastings and the Shults. Hastings testified that he was never informed that he was not working for the Company. Hastings also indicated that he believed he was under an oral contract of completion with

the Company because management had provided on-site communication concerning its demands and requirements.

The final cost for the renovation project was $77,511. Hastings testified that $30,000 had been paid so the outstanding balance was $47,511. He also stated that the Mall operations manager had told him that he would be paid as a third party by the Company. The operations manager denied Hastings' contention, testifying that he never stated Hastings would be paid by the Company. Hastings never received payment from the Company.

On June 26, 1991, Hastings filed a $42,511.46 mechanic's lien against the Shults as owners of the leased space for work done under the contract. After the Shults defaulted on their lease, the Company sued for payment and/or eviction and a determination of the validity of the mechanic's lien. The Shults vacated the space and filed for bankruptcy. The Company and Hastings were among those parties named as creditors in the bankruptcy petition. The trustee in bankruptcy abandoned the leasehold. The Company re-entered and temporarily rented the space for the same amount owed by the Shults. The space was vacant at the time of trial.

Hastings answered the petition, claiming a valid lien against the Company. A status conference was held on February 10, 1992. All parties agreed, through counsel, that discovery should be completed within 90 days, on or before May 10, 1992. Written requests for discovery were to be filed and served within 30 days, on or before March 11, 1992. A pretrial conference was scheduled for May 18, 1992.

Hastings terminated the employment of his legal counsel on March 31, 1992. Hastings' present counsel filed an entry of appearance on May 6, 1992, and a motion to dismiss or in the alternative, to grant relief to allow new counsel to file counter- and cross-complaints. Hastings' motions were denied.

The case was tried to the court. The trial court found that: (1) the lien was not timely filed; (2) the lien, as filed, was directed to the Shults' interest, which had been abandoned in bankruptcy; (3) there was no agency as to the Shults and the Company; (4) merger of interests had not been proven and, as such, was not allowed; (5) the lien was invalid and even if it were valid, it

would not attach to the Company's interest; and (6) the Company was the real party in interest.

### Rulings, Pretrial and at Trial

Hastings maintains that the trial court acted in an arbitrary and capricious manner at the May 18 hearing. The trial court refused to allow him to file counter- and cross-complaints, to extend the time for discovery, and to allow the presentation of other theories for resolution by the court. Hastings asserts that the trial court ignored his right to properly address the foreclosure aspects of the mechanic's lien law.

"The control of discovery is entrusted to the sound discretion of the trial court, and orders concerning discovery will not be disturbed on appeal in the absence of a clear abuse of discretion." *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, 454, Syl. ¶ 20, 856 P.2d 906 (1993). Furthermore, " ' "[The] trial court is given wide latitude and discretion in permitting or refusing amendments [to the pleadings] in the interests of justice. In the absence of a clear abuse of discretion the order of the trial court should be approved." ' [Citations omitted.]" *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 536, 739 P.2d 444 (1987).

The trial court acted within its discretion when it declined to extend discovery time and refused to allow Hastings to file counter- and cross-complaints.

Concerning Hastings' real party in interest argument raised in his motion to dismiss, the trial court made the following relevant conclusion of law in its memorandum opinion:

"2. The evidence presented shows that Manhattan Mall Company is an owner and a general and managing partner of the Mall and is entitled to bring this action on leased space both in its authority as a general partner and as owner defined in K.S.A. 60-1108, and is a real party in interest."

The trial court's real party in interest determination is supported by the record.

### Timely Filing

Hastings isolates four areas in which he contends the findings of the trial court were not supported by the evidence: (1) the legal sufficiency of the mechanic's lien statement; (2) timely filing of the lien; (3) the amount of the outstanding indebtedness for labor and materials; and (4) whether the indebtedness was, in

fact, chargeable to the Company. We do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *Kansas City Heartland Constr. Co. v. Maggie Jones Southport Cafe, Inc.*, 250 Kan. 32, 36, 824 P.2d 926 (1992). We find substantial evidence in the record to support the trial court's findings.

Hastings takes the position that his uncontradicted and un-impeached testimony as to the facts surrounding the filing of the mechanic's lien, performance of labor, and supplying of materials to construct the facility cannot be disregarded by the trial court. Hastings bases this claim on the fact that his testimony was the only evidence presented on the issues in controversy. He believes that the trial court cannot lawfully determine such issues in direct opposition to the evidence, citing *Lorbeer v. Weatherby*, 190 Kan. 576, 580, 376 P.2d 926 (1962). Hastings misreads *Lorbeer*. *Lorbeer* involved a negligence action in which we discussed the fact that the jury cannot disregard the only evidence upon a material question in controversy and return a verdict in direct opposition to such evidence.

The mechanic's lien at issue was filed on June 26, 1991. Hastings asserts that the only evidence at trial concerning the last date of performance of labor was his testimony that a mirror had been replaced on February 26, 1991. He also indicates that the lien statement, which showed February 26, 1991, as the last work date, was admitted into evidence. A review of the record supports the trial court's conclusion that the work on February 26 did not count as the last day of labor because the work was gratuitous.

K.S.A. 1992 Supp. 60-1102(a) requires the lien to be filed within four months of the date material was last furnished or labor was last performed. See Buckley, *Kansas Mechanics' Lien Laws: Filing—Enforcing—Defending*, 57 J.K.B.A. 27 (May-June 1988). The evidence presented on the timely filing issue consisted of a lien statement; the computerized statement account prepared by Hastings bearing the date of February 24, 1991; and the testimony of Hastings. The burden of proving the timeliness of the lien filing was on Hastings. A mechanic's lien is purely a statutory creation. Lien claimants must bring themselves clearly within the provisions of the statute authorizing the lien. *Kansas*

*City Heartland Constr. Co.*, 250 Kan. 32, Syl. ¶ 1. Hastings did not successfully carry this burden.

The Company discusses the absence of evidence at trial which could support a conclusion that the lien cutoff date should have been February 26. The facts in the case at bar do not satisfy the circumstances which can extend the lien date. See *Eisenhut v. Steadman*, 13 Kan. App. 2d 220, 222, 767 P.2d 293 (1989) (installing a plant stand, cleaning pine paneling, and tightening a front porch railing, held to extend the contract to satisfy the contract demands of owner); *Stickney v. Murdock Steel & Engineering, Inc.*, 212 Kan. 653, 656, 512 P.2d 339 (1973) (owner's demand for substitution or replacement of material, insisting that the contract was not complete, served to extend the contract); and *Benner-Williams, Inc. v. Romine*, 200 Kan. 483, Syl. ¶ 4, 437 P.2d 312 (1968) (unfinished work was a part of the original contract).

We endorse the trial court in its memorandum opinion:

"21. K.S.A. 60-1102 requires a mechanic's lien to be [timely] filed. In this instance, the statute requires the lien to be filed within four (4) months of the date in which the last material or labor was provided. The evidence presented shows that all work was performed or provided on or prior to February 24, 1991, except for a cracked mirror being replaced/repaired. No charge was made for the mirror or the labor to install it. This was, in fact, warranty work and repair. Repairs in the nature of warranty work for a job that is completed and accepted do not extend the time in which to file a mechanic's lien.

"22. The testimony of Hastings established that a final billing had been prepared and discussed on or before February 24, 1991. (Plaintiff's Exhibit No. 9.) No evidence or testimony was presented showing that the work was not completed to the satisfaction of the tenant Shult on or before February 24, 1991. No evidence was presented showing that the tenant was demanding that certain work be done or completed before payment for the contract work would be finally paid. The evidence fails to establish that any material or labor was provided on or after February 24, 1991 relating to the completion of the contract between Hastings and Shult. Thus the mechanic's lien not being filed until June 26th, 1991 was not timely filed."

The evidence supports the trial court's findings. The trial court must examine all facts surrounding the question of whether a lien was filed in a timely manner. The trial court is not required to accept a contractor's statements concerning the last work date if that statement is contradicted by the evidence. The test as to

when a piece of work is completed in order to preserve a mechanic's lien under K.S.A. 60-1101 *et seq.* is whether the unfinished work was a part of the work necessary to be performed under the terms of the original contract to complete the job and comply in good faith with the requirements of the contract. *Benner-Williams, Inc.*, 200 Kan. at 487. A subsequent gratuitous furnishing of material in the nature of a substitution or replacement to remedy a defect in the material originally delivered will not operate to extend the time within which to file a mechanic's lien. *Murdock Steel & Engineering, Inc.*, 212 Kan. at 656.

The Company discusses the fact that the lien statement only named the Shults as owners and specified the leasehold interest. We need only comment briefly on the realty interest issue as we have affirmed the trial court on the timely filing issue. The Company believes that the only interest sought under the lien was the leasehold of the tenant, which was physically abandoned by the tenant and legally abandoned by the trustee in bankruptcy. The Company concludes that the mechanic's lien, as filed, has become a nullity so the trial court's decision is not in error. The Company's analysis is supported by *Kansas City Heartland Constr. Co.*, 250 Kan. 32, Syl. ¶ 3.

Affirmed.