Karen S. **COLE**, Plaintiff,

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY**, et al., Defendants.

No. CIV.A. 04–2073–CM.

United States District Court, D. Kansas.

Aug. 11, 2004.

Dale K. Irwin, Slough, Connealy, Irwin & Madden, Kansas City, MO, for Plaintiff.

Hillary L. Hayes, Blackwell, Sanders, Peper, Martin LLP., Kansas City, MO, Randall E. Fisher, Newton, KS, for Defendants.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff brought suit against defendants American Family Mutual Insurance Company ("American Family"), Gary Cole, and Leroy Adler for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* This matter comes before the court on Defendant Leroy Adler's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 20), and Defendant American Family Mutual Insurance Company's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted (Doc. 21).

### I. Background

Defendant American Family is a Wisconsin entity with its principal place of business in Madison, Wisconsin. Defendant Adler, a Wisconsin resident, has been employed by American Family in Wisconsin since 1976 as a Farm/Ranch Underwriting Specialist, which enables him to access credit reports. Adler has not lived in Kansas, transacted other business in Kansas, or visited Kansas within the past five years.

Defendant Cole resides in Kansas and was employed by American Family from 1977 until 2003. Cole is plaintiff's ex-husband and a friend of Adler.

In September 2002, Cole requested that, as a favor to him, Adler obtain plaintiff's credit report. Adler obtained plaintiff's credit report for Cole without the permission of plaintiff or American Family. In February 2003, Cole again asked Adler to obtain plaintiff's credit report, and again, without permission from plaintiff or American Family, Adler obtained plaintiff's credit report for Cole.

American Family received notice in March 2003 that plaintiff's credit reports were obtained without her permission. Following this notification, American Family investigated the situation and discovered Adler's and Cole's role in the matter. Accordingly, American Family terminated Cole's employment with the company and disciplined Adler.

### II. Legal Standard

#### A. Motion to Dismiss

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher,* 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to

support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

## B. Personal Jurisdiction

A plaintiff opposing a motion to dismiss for lack of personal jurisdiction bears the burden of showing that the court's exercise of personal jurisdiction over the defendant is proper. *Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 456 (10th Cir.1996). If the motion to dismiss is submitted prior to trial on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing to avoid dismissal for lack of personal jurisdiction. *Id.* Although the plaintiff will be required to prove the factual basis for jurisdiction by a preponderance of the evidence at trial, on a pre-trial motion to dismiss, all factual disputes are resolved in favor of the plaintiff. *Id.* If the plaintiff makes the required prima facie showing that personal jurisdiction exists, "a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc. v. Royal Ins.,* 149 F.3d 1086, 1091 (10th Cir.1998)(quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

In the instant case, the court must determine that the exercise of jurisdiction comports with due process and that an applicable statute potentially confers jurisdiction by authorizing service of process. *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir.2000). The Kansas long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process; therefore, the court proceeds directly to the constitutional analysis. *Federated Rural Elec.* *Ins. Corp. v. Kootenai Elec. Co-op.,* 17 F.3d 1302, 1305 (10th Cir.1994).

Under the due process analysis, the "constitutional touchstone" is "whether the defendant purposely established 'minimum contacts' in the forum state." *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). A nonresident party creates minimum contacts by some act or actions in which it purposefully avails itself of the privilege of conducting activities in the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The purposeful availment requirement ensures that a defendant will not be sued in a foreign jurisdiction solely as a result of the unilateral activity of another party. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174.

Consistent with due process, specific jurisdiction may be conferred over a nonresident defendant where the court's exercise of jurisdiction directly arises from a defendant's forum-related activities. To determine whether specific jurisdiction is appropriate, the court must first decide whether the defendant has such minimum contacts within the forum state "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Second, the court must then consider whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Calif., Solano County,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

## III. American Family's Motion to Dismiss

American Family contends that it is not liable under the FCRA for violations of the

Act by American Family's employees. Plaintiff responds that American Family is directly liable for obtaining her credit report and indirectly liable for the actions of its employees, Adler and Cole, who accessed her credit report.

## A. The FCRA

In 1968 Congress, recognizing the importance of an accurate and fair credit reporting system, enacted the FCRA. In particular, Congress found that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). The FCRA, therefore, provides an exhaustive list of permissible uses of credit reports, including, among others, by written permission of the consumer, § 1681b(a)(2); in connection with the extension of credit, § 1681b(a)(3)(A), or other business transaction; and, in connection with the underwriting of insurance, § 1681b(a)(3)(C).

Violators of the FCRA are subject to both civil liability and criminal penalty. As originally implemented, the FCRA provided for a civil action against "*[a]ny consumer reporting agency or user of information*" which negligently or willfully fails to comply with any requirement of the Act. *See* Omnibus Consolidated Appropriations Act, 1997, Pub.L. No. 104–208, Div. A., Title II, § 2412(a), (c), (d) (emphasis added). Subsequently, Congress amended the FCRA through the Consumer Credit Reporting Reform Act of 1996 to impose civil liability on "*[a]ny person who*" willfully or negligently violates the Act. *Id.* at § 2401; 15 U.S.C. §§ 1681n, 1681o. The term "person" is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 16 U.S.C. § 1681a(b).

## B. Direct Liability

Pursuant to §§ 1681n and 1681o, an aggrieved plaintiff may bring an action against a corporation that fails to comply with the FCRA. Because a corporation can only act through its officers and directors, violations of the FCRA committed by these individuals results in the corporation being directly liable under the Act. *See, e.g., Comeau v. Rupp,* 762 F.Supp. 1434, 1441 (D.Kan.1991).

Plaintiff initially contends that American Family should be held directly liable due to the actions of Adler and Cole. However, plaintiff does not allege that either Adler or Cole were officers, directors, or even supervisory employees of American Family. Consequently, plaintiff has not pled the proper standards to hold American Family directly liable.

## C. Vicarious Liability

### 1. Theories of Vicarious Liability

A principal may be liable under the doctrine of respondeat superior or vicarious liability for the misconduct of its agent. First, a principal may be vicariously liable for an agent's tortious conduct if the principal expressly or implicitly authorized the conduct. *Schraft v. Leis,* 236 Kan. 28, 686 P.2d 865, 874 (1984). Second, a principal is also liable for the torts of its agent committed within the scope of the agent's authority and course of employment. *Russell v. Am. Rock Crusher Co.,* 181 Kan. 891, 317 P.2d 847, 849 (1957). Third, a principal may be liable by apparent agency for inducing or permitting a third party to believe that an agency relationship exists, allowing the apparent agent to act under the guise of the principal's authority. *Kan. City Heartland Constr. Co. v. Maggie Jones Southport Cafe, Inc.,* 250 Kan. 32, 824 P.2d 926, 932 (1992).

 Finally, the Supreme Court, in *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 759–66, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), recognized that an employer may be vicariously liable according to the "aided-in-the-agency-relation" rule. The plaintiff in *Ellerth* brought a Title VII suit against her former employer, alleging that her former supervisor subjected her to sexual harassment. The Supreme Court first reiterated the general rule that an employer is subject to liability for the torts of its employee committed during the course of his employment, meaning that Burlington would not be liable for the supervisor's harassment, which was clearly outside the scope of his employment. *Id.* at 756–58, 118 S.Ct. 2257. Nevertheless, the Court continued, an employer may be liable even where an employee's tortious action extends outside the scope of his employment. *Id.* at 758, 118 S.Ct. 2257. Specifically, pursuant to § 219(2)(d) of the Restatement (Second) of Agency, an employer is liable when the employee acts with apparent authority or was aided by the existence of the agency relationship. *Id.*

The Court distinguished the two theories outlined in § 219(2)(d) based on whether the employee is actually empowered to act in the allegedly tortious manner. According to the Court, "*apparent authority* is relevant where the agent purports to exercise a power which he or she does not have." *Id.* at 759, 118 S.Ct. 2257 (emphasis added). On the other hand, when the agent misuses actual or delegated authority, "the Restatement's *aided in the agency relation rule,* rather than apparent authority rule, appears to be the appropriate form of analysis." *Id.* at 760, 118 S.Ct. 2257 (emphasis added). The Court concluded that, in *Ellerth,* the imposition of vicarious liability was based on the misuse of actual authority, making use of the aided-in-the-agency rule appropriate. *Id.*

### 2. Case Law Analyzing Vicarious Liability Under the FCRA

At issue in this case is whether American Family should be subject to vicarious liability, under any of the above agency theories, for Adler's and Cole's alleged violations of the FCRA. The FCRA does not explicitly provide for vicarious liability. Further, neither this court nor the Tenth Circuit has considered whether an employer is subject to liability under the FCRA for violations committed by its employees. Each party in this case, however, has cited several opinions from federal courts that have reviewed the issue and reached a conclusion that supports the respective party's position. Here, as in the cases discussed below, there is no argument that American Family either authorized Adler's and Cole's conduct, or that they were acting within the scope of their employment. Instead, the courts' holdings turn on whether an employer can be held liable under the apparent authority or aided-in-the-agency-relation theories.

In *Jones v. Federated Financial Reserve Corp.,* 144 F.3d 961 (6th Cir.1998), the plaintiff brought suit after defendant's employee obtained a copy of the plaintiff's credit report at the request of the plaintiff's ex-husband. The Sixth Circuit held that the employer could be liable for its employee's violation of the FCRA under the theory of apparent liability. *Id.* at 965–66. The court reasoned that Congress's intent for enacting the FCRA was to protect consumers from misuse of their credit reports, and that the apparent authority theory is consistent with this purpose because employers are better positioned to protect consumers through use of internal safeguards. *Id.; see also Myers v. Bennett Law Offices,* 238 F.Supp.2d 1196, 1202 (D.Nev.2002)(holding that a law firm could be liable under the apparent agency theory after the law firm's parale-

gal impermissibly obtained credit reports) (citing *Jones*, 144 F.3d at 965–66).

In *Del Amora v. Metro Ford Sales and Service, Inc.*, 206 F.Supp.2d 947 (N.D.Ill. 2002), the plaintiff brought suit after his estranged wife's brother, who worked as a salesman at Metro Ford, obtained plaintiff's credit report. The court agreed with the *Jones* court that imposing vicarious liability under the FCRA was consistent with Congress's intent to protect consumers. *Del Amora*, 206 F.Supp.2d at 951. In light of the Supreme Court's decision in *Ellerth*, however, the *Del Amora* court concluded that the proper standard for the employer's liability is the aided-in-the-agency-relation theory. *Id.* at 953. The court held that Metro Ford could be liable for the acts of its salesman because he misused actual authority, which was accomplished through or aided by the agency relationship. *Id.* at 947.

Conversely, in *Kodrick v. Ferguson*, 54 F.Supp.2d 788 (N.D.Ill.1999), the court held that a loan officer's employer could not, as a matter of law, be held liable under the FCRA for the loan officer's impermissible access of the plaintiff's credit report. The court first reviewed the legislative history of the FCRA and concluded that Congress intended to impose liability only on consumer reporting agencies ("CRAs") and individuals who violate the law. *Id.* at 794. Consequently, the employer defendant could not be held liable because it was a subscriber to credit reports rather than a CRA. *Id.* at 796. The court further determined that the text of the FCRA did not support imposition of vicarious liability on a subscriber where its supervisors did not know that employees were obtaining credit reports for impermissible reasons. *Id.* at 797–98. Finally, the court expressed concern that the application of vicarious liability to a subscriber would make them strictly liable for an employee's violation of the FCRA, which is

a higher standard than that imposed on CRAs. *Id.* at 796 n. 10.

Concern over the potential result that a subscriber would be strictly liable when its employees obtained credit reports in violation of the FCRA led two other courts to conclude that a subscriber was not vicariously liable for the actions of its employee. In *Smith v. Sears, Roebuck and Co.*, 276 F.Supp.2d 603 (S.D.Miss.2003), the plaintiff sued his ex-wife's employer for not preventing his ex-wife from accessing his credit report. The court rejected the imposition of strict liability. *Id.* at 612. Instead, the court granted Sears's motion for summary judgment because the plaintiff failed to present any evidence that Sears had negligently or recklessly failed to enact procedures to prevent its employees from violating the FCRA. *Id.* Similarly, in *Graves v. Tubb*, 281 F.Supp.2d 886, 892–93 (N.D.Miss.2003), the court granted the employer's motion to dismiss "due to the lack of evidence that ... [the employer] did not take reasonable steps to prevent" its employee's violations of the FCRA.

### D. Analysis

 The court first concludes that subscribers who violate the FCRA are not immune from liability as a matter of law. The *Kodrick* court, after an extensive analysis of the FCRA, concluded that only CRAs and individuals could be liable under the FCRA. *See* 54 F.Supp.2d at 794. However, the court believes that the language of Congress's 1996 amendments to the FCRA makes clear that potential liability extends beyond CRAs to include "any person," which encompasses corporate entities.

 The main point of contention of courts that have considered this issue is the application, or not, of vicarious liability to corporate employers. It is well settled that a corporation is liable for the torts of

its employees, and the court can find no reason to assume that Congress meant to exclude traditional common-law principles of agency relationships from the FCRA. Indeed, as the *Jones* court highlighted, Congress enacted the FCRA in order to protect consumers from individuals or entities who impermissibly access consumers' credit reports. Allowing an injured consumer to hold a subscriber vicariously liable for the acts of its employees is, therefore, consistent with Congress's intent. Consequently, the court holds that American Family is potentially vicariously liable for Adler's and Cole's actions that violate the FCRA.

In this case, there is no contention that American Family authorized Adler's or Cole's conduct, nor did they act within the scope of their employment as there is no assertion that plaintiff's credit report was checked as part of American Family's business operations. Instead, American Family's liability hinges on Adler's and Cole's actions that were beyond the scope of their employment, under the apparent authority or aided-in-the-agency-relation theory.

As the court discussed above, most courts that have considered vicarious liability in this context have adopted the aided-in-the-agency-relation rule as outlined by the Supreme Court in *Ellerth*. As the Supreme Court explained in *Ellerth*, use of the agency-relation rule is more appropriate when the employee is alleged to have misused authority, rather than attempted to exercise power the employee does not, in fact, have. Nevertheless, the court recognizes that the correct application of the agency-relation rule is made difficult by the rule's relatively recent emergence and comparatively narrow application in comparison to other agency theories. As the *Ellerth* Court explained when acknowledging the confusion among Courts of Appeal when applying the Restatement's rule

in Title VII cases: "[t]he aided in the agency relation standard ... is a developing feature of agency law, and we hesitate to render a definitive explanation of our understanding of the standard in an area where other important considerations must affect out judgment." *Ellerth*, 524 U.S. at 763, 118 S.Ct. 2257.

In particular, the court shares the concern expressed by the *Kodrick* court that the agency-relation rule, as applied by courts in the context of the FCRA, may subject employers to strict liability. The FCRA provides for willful or negligent standards but nowhere does the Act impose strict liability on a person or entity. Thus, this court, while understanding that the Supreme Court provided for the use of the agency-relation rule, also concludes that application of the rule has not yet been fully delineated in every context. For example, in *Ellerth* the Court applied the agency-relation rule to a Title VII sexual harassment case and held that an employer should have the opportunity to present an affirmative defense under certain circumstances before being held vicariously liable. *See Ellerth*, 524 U.S. at 764–65, 118 S.Ct. 2257. And from the court's search, every case from the Tenth Circuit or the District of Kansas that has applied the agency-relation rule has done so only in Title VII employment discrimination cases. Further contributing to the underdevelopment of the agency-relation rule is that the Tentative Draft to the Restatement (Third) of Agency has proposed elimination of the rule as a distinct basis for an employer's vicarious liability, preferring instead to subsume it into the "more fully elaborated treatment of apparent authority." Restatement (Third) of Agency § 7.08b (Tentative Draft No. 5, 2004).

Consequently, the court concludes that American Family's vicarious liability cannot be properly considered in a motion to dismiss. Instead, the issue should be

raised at summary judgment where the parties can present evidence beyond the pleadings.[1] Specifically, the parties should address whether apparent authority or aided-in-the-agency-relation rule is the correct theory of agency liability in this case; whether an affirmative defense exists to the chosen vicarious liability theory; and, whether the affirmative defense is applicable in this context.

## IV. Adler's Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff asserts that the court may properly exercise specific jurisdiction over defendant Adler because the present cause of action arises from Adler's contacts with Kansas. Plaintiff contends that defendant Adler engaged in sufficient minimum contacts due to Adler's actions directed at plaintiff at her residence in Kansas. Specifically, plaintiff alleges that Adler violated plaintiff's privacy by obtaining her credit report in violation of the FCRA without her permission and without an adequate cause. Plaintiff also contends that minimum contacts exist because Cole's requests to Adler for the credit reports came from Kansas and Adler communicated with Cole while Cole was in Kansas.

Adler argues that even if he did impermissibly obtain plaintiff's credit report, he did so in Wisconsin and at the direction of Cole. Adler asserts that his action of making the credit inquiry is not sufficient to invoke this court's jurisdiction and did not avail him of any privilege or benefit in Kansas.

### A. Personal Jurisdiction and the FCRA

Neither this court nor the Tenth Circuit has addressed a personal jurisdiction question when dealing with an alleged FCRA violation that results from impermissibly obtaining a credit report. Other federal courts that have addressed the issue, however, have exercised personal jurisdiction over an out-of-state defendant who accessed the credit report of an in-state plaintiff. In *Myers*, 238 F.3d at 1075, the Ninth Circuit reversed the district court's determination that the court lacked jurisdiction over a nonresident defendant when his only contact with Nevada was pulling resident plaintiff's credit report in violation of FCRA. In *Liu v. DeFelice*, 6 F.Supp.2d 106, 109 (D.Mass.1998), the court exercised jurisdiction over a nonresident defendant who invaded a Massachusetts resident's privacy by accessing confidential credit information online from his New York office in violation of the FCRA. And, in *Bertolet v. Bray*, 277 F.Supp.2d 835 (S.D.Ohio 2003), the court found that defendant's running of plaintiff's credit report in Ohio caused plaintiff injury in Indiana. *See also Bils v. Nixon, Hargrave, Devans & Doyle*, 179 Ariz. 523, 526, 880 P.2d 743, 746 (1994) (finding Arizona jurisdiction appropriate over a New York defendant who allegedly invaded the privacy of an Arizona resident by violating the FCRA).

### B. Analysis

 The mere allegation of an intentional tort, coupled with the injury of a forum resident, does not automatically establish personal jurisdiction over a nonresident defendant. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir.1995). Personal jurisdiction depends, first, on whether the defendant engaged in the necessary minimum contacts. *Id.* at 1079–80. Significant to the determination of such a finding is whether "the defendant's actions

---

1. American Family has moved, in the alternative, for summary judgment based on exhibits attached to its motion to dismiss. The court exercises its discretion to deny American Family's alternative motion in order to allow plaintiff to respond and both parties to brief the court in light of the present opinion.

'were expressly aimed at' the forum jurisdiction and the forum jurisdiction was 'the focal point' of the tort." *Id.* at 1080.

■ Here, Adler admits to obtaining plaintiff's credit report without plaintiff's permission and without cause. From the information required to access a credit report and Adler's relationship with Cole, Adler was aware that plaintiff resided in Kansas. Accordingly, Adler's actions were "expressly aimed" at plaintiff, a Kansas resident. The court, therefore, concludes that Adler's contacts with Kansas are sufficient to establish the required minimum contacts needed to exercise jurisdiction.

The court also concludes that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Asahi,* 480 U.S. at 113, 107 S.Ct. 1026. The Tenth Circuit has stated that "[b]y enacting the FCRA, Congress intended to prevent invasions of consumers' privacy." *Zamora v. Valley Fed. Sav. & Loan Ass'n,* 811 F.2d 1368, 1370 (10th Cir.1987). In invasion of privacy actions, the resulting injury is the mental distress from having been exposed to public view, *Rinsley v. Brandt,* 700 F.2d 1304, 1307 (10th Cir.1983), and that injury necessarily occurs in the forum where the plaintiff was injured.

Here, plaintiff alleges emotional injuries and distress as a result of defendant Adler's credit inquiry. Because this alleged injury occurred in Kansas where plaintiff resides and defendant Adler intentionally obtained plaintiff's credit report knowing plaintiff resided in Kansas, it is reasonable to conclude that defendant Adler knew his actions would have specific impact in Kansas. As the Kansas Supreme Court explained in *Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731, 734–35 (1985), "it is possible to bring suit in Kansas to recover damages for injuries occurring in this state which resulted from negligent conduct outside the state."

The court concludes that, based upon Adler's conduct in purposefully directing his actions at Kansas and causing injury to plaintiff in Kansas, the exercise of personal jurisdiction over Adler does not violate the due process clause of the Fourteenth Amendment.

## V. Order

**IT IS THEREFORE ORDERED** that Defendant Leroy Adler's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 20), and Defendant American Family Mutual Insurance Company's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted (Doc. 21) are denied.